603 A.2d 484

ST. GEORGE ANTIOCHIAN ORTHODOX
CHRISTIAN CHURCH

v.

Rakshpal S. AGGARWAL.

No. 119, Sept. Term, 1990.

Court of Appeals of Maryland.

March 17, 1992.

M. Evelyn Spurgin (Samuel J. Brown, Hillman, Brown & Darrow, Pa., all on brief), Annapolis, for petitioner.

Paul E. Rosenberg, Camp Springs, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., EDWARD A. DeWATERS, Jr., Administrative Judge of the Third Judicial Circuit (Specially Assigned), and WILLIAM H. McCULLOUGH, Administrative Judge of the Seventh Judicial Circuit (Specially Assigned), JJ.

McAULIFFE, Judge.

When taxes on real property are not paid, the collector of taxes must sell the property at public auction. Before doing so, the collector must mail a final bill and notice of proposed sale to the owner at the address shown on the tax rolls and advertise the sale in a newspaper having general circulation in the county in which the property is located. Even after the sale the owner has a right to redeem the property by paying accrued taxes, interest, costs, and fees. That right to redeem may be foreclosed by order of a circuit

court in the county in which the land is located.[1]  The effect of foreclosing the right of redemption is significant—the property owner is divested of all right, title, and interest in the property.

This case deals with the serious question of what steps must be taken by the tax sale purchaser to attempt to notify the property owner of the impending foreclosure of the right to redeem.  Because the owner may be deprived of important property rights and state action is involved, constitutional guarantees of due process are implicated. Because the State has a significant interest in encouraging the participation of purchasers in tax sales and in the giving of marketable titles, it seeks to establish a procedure that, if carefully followed, will insulate a tax sale deed from subsequent attack.  Both interests are important;  our task is to be certain they are in balance.

## I.

On 31 July 1982, benefactors of St. George Antiochian Orthodox Christian Church (the Church) donated an unimproved parcel of land in Prince George's County to the Church, which was located in Washington, D.C.  The deed accomplishing the transfer did not contain an address for the property or an address for the Church.  The address for the Church that was apparently given to the Supervisor of Assessments[2] was 3804 52nd Avenue, Bladensburg, Maryland 20710.  That address, it now appears, was the address

---

1. *See generally Dawson v. Prince George's County,* 324 Md. 481, 484–87, 597 A.2d 952 (1991).

2. Maryland Code (1986) § 2–211 of the Tax–Property Article requires that the Supervisor of Assessments for each county maintain a record of all real property assessments.  This record must contain, among other things, the name and address of the owner of the property.  A deed changing ownership of property cannot be recorded until the transfer has been recorded in the assessment books, and the party offering the deed is responsible for providing the Supervisor of Assessments with the information required to make this transfer. Maryland Code (1974, 1988 Repl.Vol.) § 3–104 of the Real Property Article.

that someone believed corresponded to the vacant lot which was transferred to the Church.[3] Tax bills thereafter mailed to the Church at that address were not received by the Church, and property taxes were not paid. Acting pursuant to Maryland Code (1957, 1980 Repl.Vol., 1983 Cum.Supp.) Art. 81, §§ 70 through 123C,[4] the Director of Finance for Prince George's County sold the property at a tax sale on 14 May 1984, to the respondent, Rakshpal S. Aggarwal (Aggarwal).

On 2 April 1986, Aggarwal filed a complaint to foreclose the Church's right of redemption. He listed as the address of the Church the address given on the assessment rolls. All subsequent notices, publication,[5] and an attempt to serve process were directed to that address. Because the address was associated only with a vacant lot, the Church received no actual notice of the tax sale or of the proceeding to foreclose its right of redemption. On 28 June 1987, the Circuit Court for Prince George's County entered an order foreclosing the Church's right of redemption.

On 10 March 1989, the Church, having learned of the tax sale when it attempted to list the property for sale, filed a motion to set aside the tax sale. It stated, in the motion and by accompanying affidavit, that it had been continually located at 4335 16th Street in Washington, D.C. for more

---

**3.** Street addresses in Prince George's County are assigned by The Maryland–National Capital Park and Planning Commission (MNCPPC). *See* Maryland Code (1957, 1990 Repl.Vol.) Art. 28, § 5–117. The record does not reflect whether the address given to the Supervisor of Assessments has in fact been assigned to this property, or whether someone has simply assumed the address to be proper because of the addresses of neighboring improved properties, or because of a review of the grid maintained by the MNCPPC.

**4.** The law relating to tax sales was recodified in 1985 and is currently found at Maryland Code (1986, 1991 Cum.Supp.) §§ 14–808 through 854 of the Tax–Property Article.

**5.** Aggarwal caused an order of publication to be published in the *Enquirer–Gazette* for three successive weeks. The Church was named in the order of publication, and the 52nd Avenue address was given as the Church's address.

than 30 years; that it had received no notice from Prince George's County or Aggarwal that it owed taxes, or of the tax sale, or of Aggarwal's action to foreclose its right of redemption; and, that it did not believe it owed any taxes because of its status as a tax-exempt organization.[6] The Church alleged that Aggarwal had failed to comply with the requirements of the statute governing tax sales and had failed to make a reasonable investigation to obtain the Church's address. It alleged that the Church has been deprived of its property without due process of law.

Aggarwal responded that he had followed the explicit requirements of the statute, which required no investigation beyond a search of the land records and the tax rolls. After a hearing at which no testimony was taken but the affidavits of the parties were considered, Judge Joseph S. Casula denied the Church's motion, finding that Aggarwal had fully complied with the requirements imposed by statute and had used reasonably diligent efforts to provide actual notice. The Court of Special Appeals affirmed, holding that the Maryland statute was constitutional and that Aggarwal had complied with the requirements of that statute. *St. George Church v. Aggarwal,* 83 Md.App. 599, 576 A.2d 224 (1990).

## II.

The United States Supreme Court has made it clear that "state action affecting property must generally be accompanied by notification of that action...." *Tulsa Professional Collection Services v. Pope,* 485 U.S. 478, 484,

---

**6.** As the Church now concedes, it was in error in believing that it did not have to pay property taxes on this unimproved property. The Church's property was not exempt because it was not being used exclusively for worship or for educational purposes, or as a parsonage or convent. Maryland Code (1986, 1991 Cum.Supp.) § 7–204 of the Tax–Property Article. Moreover, even if the Church's use had qualified the property for tax-exempt status, "[r]eal property that is subject to exemption ... is not exempted until the exemption has been applied for and approved...." Section 7–103(a) of the Tax–Property Article.

108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988). The requirements of due process and the need to balance the interest of the State against the individual interest sought to be protected by the Fourteenth Amendment were discussed in *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), and in *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In *Mullane,* the Court found unconstitutional a New York statute permitting trust companies to provide notice solely by publication to trust beneficiaries whose names and addresses were known. The Court stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane,* 339 U.S. at 314, 70 S.Ct. at 657.

In *Mennonite,* the Court applied the principles of *Mullane* and found violative of due process an Indiana statute that permitted notice of tax sales to be given to mortgagees by publication alone. 462 U.S. at 795–800, 103 S.Ct. at 2709–12. The Court stated that

> [n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party ... if its name and address are reasonably ascertainable.

*Id.* at 800, 103 S.Ct. at 2712 (emphasis in original). In that case, the mortgagee whose notice was held to have been inadequate was identified in the records only as "MENNONITE BOARD OF MISSIONS a corporation, of Wayne County, in the State of Ohio." Although the Court noted that the State need not make extraordinary efforts to locate an unnamed party, the assumption that the address of this known party "could have been ascertained by reasonably diligent efforts" rendered constructive notice insufficient

for constitutional purposes. *Id.* at 798–800, 103 S.Ct. at 2711–12.

Finally, well aware that the plaintiff often stands to benefit from failed attempts to notify the defendant(s), the Court has stressed that

> when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.

*Mullane,* 339 U.S. at 315, 70 S.Ct. at 657, quoted in part in *Mennonite,* 462 U.S. at 799, 103 S.Ct. at 2711.

The Maryland statute regulating tax sales was significantly amended in 1986. House Bill 1828, enacted as ch. 825 of the Laws of 1986, was in part intended to "provide greater protection for due process by facilitating notice of tax sales of property in the State." Summary of Committee Report, Senate Judicial Proceedings Committee, p. 3. Chapter 825 was effective 1 July 1986, before the entry of the order foreclosing the Church's right of redemption, and therefore applies to this case.

Section 14–839 of the Tax–Property Article, which deals with notice and service of process, was completely rewritten by ch. 825. As amended, that section provides:

> (a) *Notice to defendants.*—(1) The plaintiff shall show in the title of the complaint the last address known to the plaintiff or to the attorney filing the complaint of each defendant, as obtained from:
>
> (i) any records examined as part of the title examination;
>
> (ii) the tax rolls of the collector who made the sale, as to the property described in the complaint; and
>
> (iii) any other address that is known to the plaintiff or the attorney filing the complaint.
>
> (2) Paragraph (1) of this subsection does not require the plaintiff or the attorney for the plaintiff to make any investigations or to search any other records or sources of information other than those stated.

(3) On the filing of the complaint, the court shall issue a summons to procure the answer and appearance of all the defendants as in other civil actions.

(4) This paragraph does not apply if a last known address for a defendant is not obtained as provided under paragraphs (1) and (2) of this subsection. The plaintiff shall cause a copy of the order of publication to be mailed by first class mail or certified mail, postage prepaid, to each defendant at the defendant's address as determined by the provisions of paragraphs (1) and (2) of this subsection. As to any defendant not served by summons or as provided by paragraph (5) of this section, the plaintiff shall file an affidavit in the proceedings, which affidavit:

(i) shall certify that this provision has been complied with; and

(ii) shall be accompanied by:

1. the receipt obtained from the post office for the mailing; or

2. the certified mail receipt.

(5) Notice to a defendant may be made in any other manner that results in actual notice of the pendency of the action to the defendant. When notice is made under this paragraph it shall be certified to by an affidavit that fairly describes the method and time of service.

\* \* \* \* \* \*

(b) *Same—Declared reasonable and sufficient.*—The provisions of this section as to notice to persons who may have an interest in property sold for nonpayment of taxes, coupled with the order of publication and the other publicity and notices as ordinarily accompanies the sale of such property, as well as the knowledge of the taxes and the consequences for nonpayment of the taxes is declared:

(1) to be reasonable and sufficient under all of the circumstances involved, and necessary in light of the compelling need for the prompt collection of taxes; and

(2) to supersede any other requirement in other cases or civil causes generally.

\* \* \* \* \* \*

The Church's contention that the statute does not meet the constitutional standard for due process arises from its assertion that, although ultimately relying on notice by publication, "a purchaser may ignore a reasonable source and still be in compliance with the statute." Yet the fact that the statute does not require the purchaser to employ all reasonable sources in an effort to notify the owner does not contradict the conclusion that using the sources required by the statute will result in notice reasonably calculated to reach the owner. The statute requires a tax sale purchaser to send notice in several forms to the last known address of a defendant, as listed in the tax rolls or title records (two reasonable and likely sources), as well as to any address known to the plaintiff or counsel. Section 14–839(a). As emphasized by the Supreme Court and by the courts of this State, notice by publication is not preferred, *Mennonite, supra,* 462 U.S. at 799, 103 S.Ct. at 2711, *Bailey v. Stouter,* 66 Md.App. 180, 189, 502 A.2d 1125, *cert. denied,* 306 Md. 288, 508 A.2d 488 (1986), and this statute approves of its use only as a last resort, § 14–839(a)(4).[7]

The fact that actual notice did not result in this particular case does not, by itself, render unconstitutional the statute under which the notice was attempted. Nor is it evidence that the statute generally is inadequate to satisfy the due process requirement that the provisions be reasonably cal-

---

7. Some of our earlier cases, describing tax foreclosure cases as *in rem* rather than *in personam* actions, held that service by publication was adequate unless the statute required more. *See, e.g., Hauver v. Dorsey,* 228 Md. 499, 503–04, 180 A.2d 475 (1962); *Sanchez v. James,* 209 Md. 266, 270, 120 A.2d 836 (1956). In *Mullane,* the Supreme Court rejected the notion that due process rights may vary depending on whether actions are *in rem* or *in personam.* 339 U.S. at 312, 70 S.Ct. at 656. *See also Mennonite,* 462 U.S. at 796–97 n. 3, 103 S.Ct. at 2710 n. 3 ("Our cases have required the State to make efforts to provide actual notice to all interested parties comparable to the efforts that were previously required only in *in personam* actions.").

culated to effect notice. *See Mullane, supra,* 339 U.S. at 319, 70 S.Ct. at 660 ("The statutory notice ... is inadequate, not because in fact it fails to reach everyone, but because under the circumstances it is not reasonably calculated to reach those who could easily be informed...."); *Golden Sands Club v. Waller,* 313 Md. 484, 500–01, 545 A.2d 1332 (1988) (mailed notice, whether or not received, suffices if reasonably calculated to reach the person).

Aggarwal maintains he fully complied with the statutory requirements by examining the title and tax records for the property and mailing notice to the address of record. Moreover, Aggarwal notes that he took additional steps, including looking in the white pages of the telephone books and contacting the local Postmaster and the Maryland Department of Assessments and Taxation to find an address for the Church.

The Church argues that Aggarwal "did not make reasonable efforts to comply with the statute" and that "[t]he efforts of Aggarwal to actually serve the Church were unreasonable and inadequate, even when utilizing the sources listed in Section 14–839." The Church points out, with convincing force, that Aggarwal knew the address he was using for the Church was a "bad addresss," i.e., one that would not serve to accomplish actual notice. The address corresponds to the location of the property, which is a vacant lot. The Church notes that Aggarwal must have known the property was unimproved because: 1) the tax in arrears for the property was only $226.17; 2) Aggarwal's search of the assessment rolls would have shown an assessment for land only;[8] and 3) in his complaint to foreclose the right of redemption, which also involved another property Aggarwal had purchased at the tax sale, Aggarwal described the Church's property only as a parcel of land, while describing the other property as a lot "and improvements."

---

**8.** Section 2–211(b)(1)(v) of the Tax–Property Article requires that the tax assessment records show separately the assessment of the land and that of any improvement on the land.

Moreover, a summons issued to the Church at that address was returned "non est" on 10 June 1986, and the sheriff included in his return the notation "per fire board bad address."

Additionally, the Church argues, Aggarwal had information concerning the Church's correct address virtually "at hand," and simply turned a blind eye to an obvious and immediate source of correct information. This source, according to the Church, was Commonwealth Land Title Insurance Company, the title company that Aggarwal knew had handled the transfer of the property to the Church less than two years before the tax sale. The Church's argument on this point is supported by the land records. The deed conveying the property to the Church consisted of only two pages, both of which were recorded. The second page ended with the acknowledgment of the Notary Public at the top of the page. It also served as the "backing" for the deed, and contained a rectangle or "box" of preprinted and typed identifying information.[9] Included in this information, at about the center of the box, was the name and Washington, D.C. address of Commonwealth Land Title Insurance Company. Below that, at the bottom of the box, were the printed words "mail to;" and the typed word "Grantee." No address was given for the grantee.

Aggarwal does not deny that a search of the land records disclosed this information. He argues, however, that the statute expressly provides that the plaintiff and the attorney for the plaintiff need not "make any investigations or ... search any other records or sources of information other than [the records examined as part of the title exami-

---

**9.** The "box" of identifying information may well be a holdover from earlier days when pleadings were required to be covered with a backing. After being folded twice, the pleadings were filed in narrow drawers. The "box," printed transversely to other written material on the pleading, was then upright, and served to identify the pleading without the necessity of opening it. Customarily, deeds were similarly backed and marked, and in Talbot County the practice is required by statute. *See* § 3–104(f)(3) of the Real Property Article.

nation and the tax rolls relating to the property]." Section 14–839(a)(2) of the Tax–Property Article.

Resolution of this question requires construction of the statute, and particularly of the following portion of § 14–839:

(a) *Notice to defendants.*—(1) The plaintiff shall show in the title of the complaint the last address known to the plaintiff or to the attorney filing the complaint of each defendant, as obtained from:

(i) any records examined as part of the title examination;

(ii) the tax rolls of the collector who made the sale, as to the property described in the complaint; and

(iii) any other address that is known to the plaintiff or the attorney filing the complaint.

(2) Paragraph (1) of this subsection does not require the plaintiff or the attorney for the plaintiff to make any investigations or to search any other records or sources of information other than those stated.

We must determine what the legislature meant to include as information *known* to the plaintiff or his attorney, as that word is used in subsection (a)(1)(iii). If, for example, the attorney knew that he had a correct address for the defendant in his files or in his personal directory, but could not recall the address without looking it up, does he "know" the address within the meaning of the statute?

We recently addressed a question of what is included within a requirement of "actual knowledge" in *Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 462, 601 A.2d 633 (1992), where we pointed out that a requirement of actual knowledge did not mean "constructive knowledge" or "substantial knowledge" or "should have known." We said:

Actual knowledge, however, does include the wilful refusal to know. *See, e.g., State v. McCallum,* 321 Md. 451, 458–61, 583 A.2d 250, 253–255 (1991) (Chasanow, J., concurring).... Therefore, a defendant cannot shut his eyes or plug his ears when he is presented with evidence

of a defect and thereby avoid liability for punitive damages.

*Id.* at 462 n. 23, 601 A.2d 633. In *State v. McCallum,* 321 Md. 451, 583 A.2d 250 (1991), Judge Chasanow, in a concurring opinion, noted:

> There is more than one mental state that may constitute "knowledge." The first and highest form of "knowledge" is actual knowledge, that is, an actual awareness or an actual belief that a fact exists. A second form of "knowledge" is what has often been called "deliberate ignorance" or "willful blindness." R. Perkins, *Criminal Law,* Ch. 7, § 4 at 687 (1957). The latter form of "knowledge" exists where a person believes that it is probable that something is a fact, but deliberately shuts his or her eyes or avoids making reasonable inquiry with a conscious purpose to avoid learning the truth.

*Id.* at 458, 583 A.2d 250.

If Aggarwal's argument is correct, subsection (a)(2) of § 14–839 obviates the need for *any* additional investigation, even consulting one's own files where correct information is known to be. On the other hand, if the word "known" is given its usual meaning as defined in *Owens–Illinois,* then subsection (a)(2) means only that no investigation or search beyond that necessary to avoid willful ignorance is required.

Given the importance of the property right that is involved in the foreclosure of a right of redemption, and the principles of due process so recently enunciated by the Supreme Court, we adopt the latter interpretation of the statute which embraces the conventional meaning of the word "known." Indeed, we believe an interpretation that would permit a purchaser to engage in deliberate ignorance to the detriment of the owner's interest in the land would be at least constitutionally suspect. As we have stated on many occasions, a court will, whenever reasonably possible, construe and apply a statute to avoid casting serious doubt upon its constitutionality. *Schochet v. State,* 320 Md. 714, 725, 580 A.2d 176 (1990); *Board of Trustees v. City of*

*Baltimore,* 317 Md. 72, 97, 562 A.2d 720 (1989); *Craig v. State,* 316 Md. 551, 566, 560 A.2d 1120 (1989).

■ Moreover, and for much the same reasons, we conclude that where, as here, the plaintiff or his attorney becomes aware that the address given on the tax rolls is a "bad address," i.e., is not a correct address for the owner of the property, the plaintiff and his attorney will be held to "know" an address of the owner within the meaning of the statute when, except for manifest indifference to information shown in the land records or the tax rolls, they would have actually discovered that address.

The statute directs that the address of the owner to which notice must be sent is to be obtained from "any records examined as part of the title examination" as well as from the tax rolls or other information known to the plaintiff or the plaintiff's attorney. Section 14–839(a). Merely relying upon a conventional title abstract may not be sufficient, at least where a question has arisen concerning the validity of the address appearing in the tax rolls. An ordinary title abstract is generally concerned with the validity of title and incumbrances against the property, and not necessarily with information contained in the land records that would shed light on the address of the last owner. For example, if the information box on the deed to the Church had contained, in addition to the words "Mail to: Grantee," the full Washington, D.C. address of the grantee, it can hardly be doubted that this would constitute an address that was "obtained from ... any records examined as part of the title examination." Yet, that information might or might not appear in a conventional abstract of title.

■ In the case before us, the deed did not contain the Washington, D.C. address of the Church. It did, however, contain the name and address of the title company which had handled the transfer of the property to the Church less than two years before the tax sale, and that information was therefore known to Aggarwal or his attorney. As the Church has pointed out, Aggarwal's attorney knew that the

52nd Avenue address listed on the tax rolls was a "bad address"—that mail sent to that address would not reach the Church. Indeed, the address appeared to be that of the property, which was known to be unimproved. We think it clear that under the circumstances of this case there was a high probability that the title company knew the correct address of the Church,[10] and that this information could be obtained by the expenditure of no more effort than a telephone call or a letter to the title company.

Under these circumstances, the failure to put forth this minimal effort is analogous to the failure to check one's own records when reasonably certain that a valid address will be found therein. Here, Aggarwal's attorney must have believed it highly probable that Commonwealth possessed the correct address of the Church, and that he could obtain that information with a minimum of effort. He cannot, in those circumstances, be permitted to avoid making reasonable inquiry with a conscious purpose to avoid learning the truth. Such inaction may not be "deliberate ignorance" within the meaning of *Owens–Illinois* or *McCallum*, but it is at least the type of manifest indifference which we have held cannot be countenanced without offending concepts of due process in a case of this kind. The correct address of the Church was therefore "known" to Aggarwal's attorney within the meaning of § 14–839(a). The attorney's failure to mail a copy of the order of publication to the Church at that address resulted in the court not acquiring jurisdiction of the person of the defendant, and necessitates vacating the order foreclosing the right of redemption.[11]

---

**10.** The Church has filed a copy of the settlement sheet given it by Commonwealth, which shows that the title company did have the Church's correct Washington, D.C. address.

**11.** Section 14–845(a) of the Tax–Property Article provides that a court may not reopen a judgment rendered in a tax sale foreclosure proceeding except on the ground of the lack of jurisdiction or fraud in the conduct of the proceedings, and further provides that an application to reopen based on constructive fraud must be filed within one year

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THE CASE TO THAT COURT FOR ENTRY OF AN ORDER GRANTING PETITIONER'S MOTION TO VACATE THE ORDER FORECLOSING THE RIGHT OF REDEMPTION; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID ONE-HALF BY EACH PARTY.

from the date of judgment. The successful challenge to the judgment in this case is grounded on lack of jurisdiction of the person, and the statute is therefore no bar to this proceeding.