603 A.2d 1251

John R. KENNEDY, et al.,

v.

Annette Maria CUMMINGS, et al.

No. 720, Sept. Term, 1991.

Court of Special Appeals of Maryland.

April 3, 1992.

Karen H. Abrams, Leonardtown, for appellants.

Thomas R. Simpson, Jr., La Plata, for appellees.

Argued before BISHOP, ALPERT and ROSALYN B. BELL, JJ.

BISHOP, Judge.

Appellants, John R. Kennedy ("Kennedy") and Mary A. Kerig ("Kerig"), his wife, appeal from a decision of the

Circuit Court for Charles County (Nalley, J.) setting aside a Decree that, *inter alia*, vested in Kennedy absolute title in fee simple to certain unimproved real property in Charles County that he purchased at tax sale.

### Issue

Appellants present the following issue:

I. Can proper compliance by Appellants with the tax sale foreclosure procedure required by the Tax Property Article of the Annotated Code of Maryland still result in constructive fraud on their part so as to relieve them of the knowledge attributed to them by Section 14–839(b) of the Tax–Property Article of the taxes and the consequences for non-payment of the taxes?

Appellees raise the following additional issue in their brief:

II. Does failure to comply with Maryland Rule 2–202(c) render the August 7, 1990 Decree void for lack of jurisdiction?

### Facts

On May 17, 1988, the Treasurer for Charles County, Maryland sold to appellant Kennedy for the sum of $3,100 certain real property located in Charles County and described as Lot 1, Knotts Subdivision, West Glymont, Town of Indian Head, for the failure to pay $116.44 in county taxes assessed to Annette M. Cummings and Lisa R. Carter. A Certificate of Sale was issued stating that after November 18, 1988, a proceeding could be brought to foreclose all rights of redemption on the property. On May 4, 1990, Kennedy filed a Complaint to Foreclose Right of Redemption naming, *inter alia*, appellees as defendants. Accompanying the complaint was an affidavit of search in which counsel for appellants stated that she had:

> cause[d] a forty (40) year title search to be undertaken of the properties described in this action, including the Land Records of Charles County, Maryland, the records of the Register of Wills for Charles County, Maryland, and the

records of the District and Circuit Courts for Charles County, Maryland, both law and equity, and [that she] included as parties to this action all owners of record of said properties, all mortgagees and all lien and judgment holders as described by said title search, and that all such parties shall be duly notified as required by Section 14–838 of the Tax–Property Article[.]

An Order of Publication was filed on May 7, 1990 ordering that notice be given warning all defendants and all persons having or claiming interest in the property to appear and redeem the property by July 9, 1990 or thereafter a final decree foreclosing all rights of redemption and vesting title in Kennedy free of encumbrances would be rendered. On June 13, 1990, counsel for appellants filed an affidavit of non-est service stating that she had mailed, by certified mail return receipt requested, copies of the Subpoena, Complaint to Foreclose Right of Redemption, and Order of Publication to appellees. The mailing addresses listed on the affidavit for both appellees was 5804 Annapolis Road, # 704, Bladensburg, MD 20710. This was the address for appellees as shown on the tax rolls for Charles County. The affidavit indicated that both letters had been returned marked "Return to Sender—Moved—Not Forwardable." Counsel for appellants further certified:

I have made the following attempts, pursuant to section 14–839(4) of the Tax–Property Article ... to locate [appellees], and have failed to discover any further information as to their present whereabouts:

1. Review of the Land Records for Charles County, Maryland.

2. Review of the Circuit Court records for Charles County, Maryland.

3. Review of the records of the Office of Assessments and Taxation for Charles County, Maryland.

4. Review of the records of the Office of the Treasurer for Charles County, Maryland.

Also on June 13, 1990 counsel for appellants filed a Certificate of Publication certifying that the Order of Publication

was published once a week for at least three successive weeks in the Maryland Independent, a newspaper in Charles County. The date for redemption having passed, the circuit court on August 7, 1990 issued a Decree vesting in Kennedy absolute fee simple title in the property. In addition, the Decree ordered that: 1) the Treasurer for Charles County execute a deed to the property to Kennedy upon proper payment; 2) the Supervisor of Assessments enroll Kennedy as owner in fee simple of the property; 3) the Decree was final and conclusive and binding on appellees; and 4) the clerk issue certified copies of the Decree to the Treasurer and the Supervisor of Assessments for Charles County. A Deed was executed by the Treasurer for Charles County on November 16, 1990 transferring title to the property to Kennedy and Kerig, his wife, as tenants by the entireties. The Deed was duly recorded in the land records for Charles County.

On January 17, 1991, appellees filed a Motion Pursuant to Maryland Rule 2–535(b) claiming that Kennedy had committed constructive fraud in obtaining the final Decree. Appellees explained in their motion that the property is located within the Town of Indian Head, and that the Town tax bills were received and paid by appellees. The appellees' new address of 6 Summit Court, Indian Head, Maryland was properly listed on the Town tax rolls. Appellees maintained they never received the county tax bills for the time period in question and "were under the impression that having paid the [city] tax bill they did receive that there were no other and further taxes due and owing." Apparently appellees were confused about their tax bills as a result of the annexation of their property to the Town of Indian Head. Appellees further stated in support of their motion:

10. That had [Kennedy] upon discovery that the real property taxes for the Town of Indian Head were paid should have made further inquiry to determine the address of the [appellees] so as to give them actual notice of this proceeding.

11. That had [Kennedy] performed a title examination of the land records in accordance with generally accepted standards he would have discovered the [appellees] current address.

The Rule 2–535(b) motion also stated that appellee Lisa Roxanne Carter is a minor.

In their prayer for relief appellees requested: 1) the circuit court exercise its revisory power over the Decree and set it aside and declare the Deed from the treasurer to Kennedy and Kerig null and void; 2) appellees be allowed to redeem the property from the effects of the tax sale; 3) a hearing be scheduled on the motion; 4) a show cause order be issued requiring Kennedy and Kerig to show cause why they should not be barred from selling the property; 5) Kerig be joined as a party; and 6) appellees be granted other and further relief as their cause required.

A Show Cause Order was issued and a hearing was scheduled for March 26, 1991 on the Rule 2–535(b) motion. Following a non-evidentiary hearing, the court granted appellees' motion and set aside the Decree. The court stated in support of its action:

I conclude that these parties by reason of the Indian Head annexation and the Indian Head billing for taxes put these parties in a position of not being able to realize or not realizing in fact that other taxes were due and that there was a consequence attaching to their non payment. [From w]hat I am told here[,] these parties were getting a tax bill and were paying a tax bill. Had they not been doing so I would conclude that they were chargeable with notice that something unpleasant even as unpleasant as a tax sale [was a] likely consequence[ ]. I don't think we can read paragraph b [§ 14–839(b) of the Tax–Property Article] ... without giving effect to that clause. It is a qualifier and a limiter. So I am going to grant that motion and set aside the de[c]ree.

We shall affirm the decision of the circuit court setting aside the Decree, albeit for reasons different from those enunciated by the circuit court.

### Discussion

█ Prior to addressing the merits, we mention a procedural point regarding the proper parties to this appeal. The complaint in this matter lists John R. Kennedy as the only plaintiff. The Decree issued by the circuit court vested absolute and indefeasible title in fee simple in the property in "the Plaintiff," and further ordered the Treasurer for Charles County to execute a deed to the property to "the Plaintiff." The only plaintiff was Kennedy. Nevertheless, the County Treasurer executed a Deed conveying the property to "John R. Kennedy and Mary A. Kerig, his wife, as tenants by the entireties[.]" The caption in the pleading noting an appeal to this Court reads: "John R. Kennedy, Plaintiff, and Mary A. Kerig, Interested Party." In their briefs, however, the parties designate both Kennedy and Kerig as appellants. By virtue of her ownership of the property, Kerig is a necessary party. *Bachrach v. Washington United Coop.*, 181 Md. 315, 318, 29 A.2d 822 (1943) ("It is a fundamental rule that all persons interested in the subject matter of a suit must be made parties to it[.]"). We treat Kerig as an appellant for the following reason. Appellees in their Motion Pursuant to Maryland Rule 2–535 requested that Kerig be joined as a party. The circuit court granted this motion and set aside the Decree. By granting the motion, the circuit court granted appellees' request that Kerig be joined as a party. She is, therefore, a proper appellant in this appeal.

### The Merits

### I.

█ In the recently decided case of *St. George Antiochian Orthodox Christian Church v. Aggarwal*, 326 Md. 90, 603 A.2d 484 (1992), the Court was called upon to balance the competing interests of property owners and purchasers at tax sale. This case requires us to perform the same task. At issue is whether appellants were required to examine the tax records of the municipality of Indian Head in order to fulfill their statutory obligation under Md.Tax–

Prop.Code Ann. § 14–839(a)(1), which required appellants to notify appellees of the sale at appellees' last known address, as obtained from "any records examined as part of the title examination." We hold that appellants were required to examine the municipal tax records. We explain.

In 1986, the legislature made extensive changes to the laws governing tax sales. 1986 Md.Laws ch. 825. These changes, to which we refer *infra,* included decreasing the time, from 1 year and a day to 6 months, that a purchaser must wait after tax sale to file a compliant to foreclose all rights of redemption, and enunciating a procedure by which a plaintiff is to obtain the last known address of each defendant listed in the complaint to foreclose the right of redemption. In *Aggarwal,* the Court discussed that the changes were intended to "provide greater protection for due process by facilitating notice of tax sales of property in the State." Summary of Committee Report, Senate Judicial Proceedings Committee, p. 3, *Id.,* at 96, 603 A.2d 484.

Section 14–836(b) of the Tax Property Article sets forth who must be named as a defendant in a suit to foreclose the right of redemption. The language we have emphasized was added in 1986:

(b) **Except as otherwise provided in this subsection, the** defendants in any action to foreclose the right of redemption shall be:

(i) the **record title holder** of the property as disclosed by a search **performed in accordance with generally accepted standards of title examination** of the land records of the county, of the records of the register of wills of the county, and of the records of the circuit court for the county[.]

1986 Md.Laws ch. 825.

Section 14–839, dealing with notice to defendants, was rewritten in its entirety in 1986. It now provides, in pertinent part:

(a) *Notice to defendants.—*

(1) The plaintiff shall show in the title of the complaint the last address known to the plaintiff or to the attorney filing the complaint of each defendant, as obtained from:

(i) any records examined as part of the title examination;

(ii) the tax rolls of the collector who made the sale, as to the property described in the complaint; and

(iii) any other address that is known to the plaintiff or the attorney filing the complaint.

(2) Paragraph (1) of this subsection does not require the plaintiff or the attorney for the plaintiff to make any investigations or to search any other records or sources of information other than those stated.

The legislature has further declared the above notice provisions reasonable and sufficient:

(b) *Same—Declared reasonable and sufficient.*—The provisions of this section as to notice to persons who may have an interest in property sold for nonpayment of taxes, coupled with the order of publication and the other publicity and notices as ordinarily accompanies the sale of such property, as well as the knowledge of the taxes and the consequences for nonpayment of the taxes is declared:

(1) to be reasonable and sufficient under all of the circumstances involved, and necessary in light of the compelling need for the prompt collection of taxes; and

(2) to supersede any other requirement in other cases or civil causes generally.

Md.Tax–Prop.Code Ann. § 14–839(b) (Supp.1991).

Section 14–839 (Notice) lists three sources, and only three sources, from which a plaintiff in a tax foreclosure proceeding is to obtain the last known address of any defendant in the proceeding: 1) any records examined as part of the title examination; (2) the tax rolls of the collector who made the sale; and (3) any other address that is known to the plaintiff or the attorney filing the complaint. Appellees do not contend that the second or the third means of obtaining

their current address apply in this case: appellees don't argue appellants or their attorney knew appellees' current address, and the tax rolls of the collector who made the sale, the collector for Charles County, did not contain the proper address. Relying on § 14–839(a)(1)(i), appellees do contend, however, that a proper title examination required the title examiner to check the tax records of the Town of Indian Head. Appellees argue that "[h]ad the appellants' title examiner checked the Town of Indian Head records they would have discovered the Appellees' current address and should have included it in their complaint." Appellants, who do not contest that the municipal tax records contained the correct address, respond that they were not obligated to search the municipal tax records because § 14–836 required them to search only the county land records, the records of the register of wills of the county, and the circuit records. Appellees have the better argument.

The difference between § 14–836(b)(1)(i) (Defendants) and § 14–839(a)(1)(i) (Notice) is subtle and might not be noticed at first blush. Section 14–836(b)(1)(i) requires a title search "in accordance with generally accepted standards of title examination" of the *county* land records, register of wills records, and of the circuit court records. Section 14–839(a)(1)(i), on the other hand, does not so limit the places to be searched to obtain a defendant's last known address to three places; the last known address is obtained from "*any* records examined as part of the title examination." (emphasis added). We believe the legislature intended § 14–839(a)(1)(i) to require a broader search than § 14–836(b)(1)(i). We explain.

■ The purpose of § 14–836(b)(1)(i) is to determine the *name* of the defendant record title holder(s). The plaintiff must look in three places for this name. Section 14–839(a)(1), however, describes how a plaintiff is to obtain the last known *address* of a defendant after the defendant has been named. The address is obtained from "any records examined as part of the title examination." Once the name of a defendant has been determined, it is sensible to conduct

a broader search to determine the address of the defendant. Although the legislature has limited the places a plaintiff must look to determine who owns property sold at tax sale, the plaintiff, having obtained the name of the defendant, must perform a *complete* title search to discover the defendant's last known address. There is only one title search required by the statute and, whether it is the one to which the legislature referred in § 14–839(a)(1)(i) or in § 14–836(b)(1)(i) it should be "in accordance with generally accepted standards of title examination." A plaintiff, it should be remembered, has no real incentive to find the defendant's address, because, as a result of notice to the defendant, the defendant may redeem the property and thwart the plaintiff's efforts to purchase the property. By limiting the places a plaintiff must search to determine the names of property owners, but requiring a complete title examination in accordance with generally accepted standards of title examination to determine the address of a defendant once named, the legislature has reduced the burden on a plaintiff in a foreclosure action, while still affording some protection to property owners who owe taxes.

With this said, the question before us is whether "generally accepted standards of title examination" require a search of the tax records of the municipality in which the property is located. The section of *The Maryland Title Searcher's Handbook* that deals with real property tax information states:

Prior to initiating the actual title search in the land records, the title searcher should check the status of real estate taxes on the subject property and provide the following to his [or her] source[:]

\* \* \* \* \* \*

3. amount of any municipal taxes (incorporated areas have separate taxing authority), if applicable[.]

B. Waterbury, III, *The Maryland Title Searcher's Handbook* § 6–201, at 64–65 (2d ed. 1990). We hold that a title

search performed in accordance with generally accepted principles of title examination includes a search of the municipal tax records, if the property is within municipal boundaries.

Our conclusion is supported by *Seidel v. Panella,* 81 Md.App. 124, 567 A.2d 134 (1989), *cert. denied,* 319 Md. 72, 570 A.2d 864 (1990), a case that was decided after the 1986 amendments, *supra.* In *Seidel,* the trial court denied appellants' motion to vacate the order foreclosing their right of redemption to property located in Montego Bay Mobile Home Park, Worcester County without holding a hearing. The circuit court had foreclosed appellants' right of redemption after service at the address taken from the Worcester County Treasurer's Office was returned, and after publication in a Worcester County newspaper. We remanded the case to the circuit court so that a hearing could be held on appellants' contention that several acts or omissions by appellees constituted constructive fraud. We explained appellants contentions as follows:

First, they [appellants] argue that the affidavit delineating efforts to locate the appellants was defective both in form and substance. The Panellas' counsel filed the affidavit which purportedly recounts Mr. Panella's not the affiant's, effort to locate appellants. Not until September 28, 1988, in response to appellants' motion to vacate was Mr. Panella's own affidavit filed. This subsequent affidavit was, however, untimely. The appellants further claim that merely checking area phonebooks was not an adequate attempt to discover their correct address. *Arnold,* 282 Md. 375, 384 A.2d 729. Appellants note that their current address appears on Worcester County Sanitary District records and Ocean City Water Department records. Appellants also state that, pursuant to recorded covenants, the property is subject to an annual maintenance fee collected by the Montego Bay Civic Association whose records bear appellants' current mailing address. These three sources, appellants claim, should have been examined during the title search required by Tax–Proper-

ty Art., § 14–839(a)(1)(i) and would have provided the correct information.

Appellants also contend that the requisite mailing of the publication order was not accomplished. Tax–Property Art., § 14–839(a)(4). In turn, no affidavit certifying compliance with this requirement was filed. Tax–Property Art., § 14–839(a)(4).

81 Md.App. at 132, 567 A.2d 134. In response to appellants contentions, we held: "The sum of appellants' allegations, if proven to the satisfaction of the trial court, is sufficient to constitute constructive fraud." *Id.*

At the time of our opinion in *Seidel*, § 14–839 was as we have quoted it, *supra*, yet, we strongly implied that "any records examined as part of the title examination" included more than appellant has done in the case *sub judice* and more than those items contained in § 14–839(a)(1)(ii) and (iii), even though the limitations contained in § 14–839(a)(2) were before us. *Seidel*, at least by implication, interprets § 14–839(a)(1)(i), as we do, to require that the search must be made in accordance with "generally accepted standards of title examination." *See generally, Arnold v. Carafides,* 282 Md. 375, 383, 384 A.2d 729 (1978).

Our decision is supported further by the recent Court of Appeals decision in *Aggarwal, supra.* In that case the Court ordered that petitioner's motion to vacate the order foreclosing the right of redemption be granted because of respondent's failure to comply with the statutory notice requirements. The respondent had mailed petitioner's notice to the address listed on the records of county Supervisor of Assessments, which was, in fact, the address of the unimproved property. While the deed to petitioner recorded in the land records did not contain petitioner's address, it did contain the name and address of the title company that had handled the transfer of the property to petitioner less than two years before. The Court concluded that where a plaintiff or his attorney becomes aware the address given on the tax rolls is a "bad address", .e. not a correct address for the owner of the property, the plaintiff and his attorney

"know" the address of the owner within the meaning of § 14–839(a)(1) "when, except for manifest indifference to information shown in the land records or the tax rolls, they would have actually discovered that address." *Aggarwal,* at 103, 603 A.2d 484. The Court stressed in its decision underlying due process concerns and the general inadequacy of notice by publication. The Court quoted from *Mennonite Bd of Missions v. Adams,* 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983) wherein the Supreme Court stated:

> [n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interest of *any* party ... if its name and address are reasonably ascertainable.

(Emphasis in original.) 326 Md. at 95, 603 A.2d 484. Speaking of the Supreme Court, the Court of Appeals then said:

> Although the Court noted that the State need not make extraordinary efforts to locate an unnamed party, the assumption that the address of this known party "could have been ascertained by reasonably diligent efforts" rendered constructive notice insufficient for constitutional purposes.

*Aggarwal,* at 95, 603 A.2d 484 (citing *Mennonite,* 462 U.S. at 798–800, 103 S.Ct. at 2711–12).

In the case *sub judice,* appellants knew the name of the property owner. Moreover, they knew the address they had was a "bad address." Had appellants completed a title search in accordance with generally accepted standards of title examination, they would have discovered appellees' correct address.

While we are mindful that our decision obligates a plaintiff in a proceeding to foreclose rights of redemption to check municipal, as well as county, tax rolls in order to protect against Rule 5–353(b) motions, we do not find this to be an onerous burden. Rather, we believe it is a safeguard

intended by the legislature as a means of notifying property owners that they are in danger of losing their property.

## II.

Appellees also contend that the Decree vesting title to the property in Kennedy is "void for lack of jurisdiction" for "failure to comply with Maryland Rule 2–202(c)." Rule 2–202(c) requires the guardian or other fiduciary of an individual under a disability, in this case minority, to defend an action brought against the minor. If there is no such guardian, the Rule requires the court to appoint an attorney to represent and defend the individual.

Because we affirm the decision of the circuit court setting aside the Decree for the reasons stated above, it is unnecessary for us to address appellees' contentions regarding compliance with Rule 2–202(c).

JUDGMENT AFFIRMED. APPELLANTS TO PAY THE COSTS.