# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Philadelphia | : | |
| | : | |
| v. | : | No. 264 C.D. 2015 |
| | : | Argued: October 5, 2015 |
| Morris Park Congregation of | : | |
| Jehovah's Witnesses, | : | |
| | : | |
| Appellant | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  March 7, 2016**

Morris Park Congregation of Jehovah's Witnesses (Appellant) appeals the October 1, 2014 order of the Philadelphia County Court of Common Pleas (Trial Court) denying Appellant's Amended Motion to Redeem 6122 Lancaster Avenue, Philadelphia, Pennsylvania (Property) and/or Set Aside the March 9, 2014 Sheriff's sale of the Property conducted pursuant to the authority provided by the Municipal Claims and Tax Lien Act[1] (MCTLA) as a result of Appellant's failure to pay taxes to the City of Philadelphia (City).  Concluding that service was not perfected under the MCTLA, we reverse the order of the Trial Court.

Before this Court, Appellant argues *inter alia* that service by (i) first class mail, (ii) certified mail, and (iii) posting prior to the Sheriff's sale of the Property was inadequate.  Initially, the City argues that this Court is prohibited

---

[1] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7505, 7193.2(c).

from reaching the issue of service because Appellant's Amended Motion to Redeem and/or Set Aside the Tax Sale was not timely filed.

On February 26, 2010, drawing upon funds from three Jehovah's Witnesses congregations, Appellant purchased the Property for consideration of $282,500 with the intention of constructing a Kingdom Hall. The deed was recorded on March 1, 2010. Following purchase of the Property, Appellant cleaned the Property but left the Property vacant, occupied only by a garage and a trailer surrounded by a chain link fence. By September 2013, Appellant had accrued $9,219.61 in municipal tax debt to the City.[2] On March 19, 2014, Finite Developers, LLC purchased the Property at Sheriff's sale for $71,000. Following the sale, approximately $10,117.19 went to the City to satisfy Appellant's municipal tax debt, $7,863.57 to the Sheriff for costs, transfer taxes and water charges, and $53,019.24 remained as the amount over bid. On May 22, 2014, the Sheriff's designee acknowledged Finite's deed to the Property with his signature. However, it was not until July 28, 2014 that the acknowledged deed was recorded and received by the court, available to the public, and most importantly in this instance, to Appellant. In the interim, on June 16, 2014, Appellant filed its Motion to Redeem the Property.

In its June 16, 2014 Motion to Redeem, Appellant challenged service under the MCTLA. While the motion was not properly titled as a motion to

---

[2] Appellant requested copies of "[a]ll tax bills, including copies of letters, envelopes, return receipt cards, United States Postal Service ("USPS") receipts and documents related to the tax bills for 6122 Lancaster Avenue, Philadelphia, PA 19151 ("Premises") from 2011 to present." (Appellant's Request for Production of Documents, R.R. at 329a.) The City filed an answer to the request, which stated "[a]fter reasonable investigation, it has been determined that the City of Philadelphia, Department of Revenue (the "City") has no documents in its possession responsive to the requests." (Answer to Request for Documents, R.R. at 33a.) Presumably, the unproduced tax bills were mailed to the vacant Property or to the address listed on the deed and, regardless of the City's ability to produce copies of Appellant's tax bills, an owner of real property has constructive notice that municipal taxes must be paid.

redeem and/or set aside the tax sale until Appellant filed its Amended Motion on September 9, 2014, the Motion to Redeem clearly sought to redeem the Property or, in the alternative, to set aside the tax sale.[3] A motion to set aside must be filed within three months of the acknowledgement of the deed to the premises by the sheriff. Section 39.3 of the MCTLA, added by Act of December 14, 1993, P.L. 589, 53 P.S. § 7193.3. Appellant's motion was filed within three months of the Sheriff's May 22, 2014 signature acknowledging the deed and prior to the recording of the deed. Appellant's motion was timely; the artless titling of Appellant's motion does not amount to waiver of its request to set aside the tax sale.

The purpose of a sheriff's sale under the MCTLA "is not to strip an owner of his or her property but to collect municipal claims." *City of Philadelphia v. Manu*, 76 A.3d 601, 606 (Pa. Cmwlth. 2013); *see also Fernandez v. Tax Claim Bureau of Northampton County,* 925 A.2d 207, 215 n.18 (Pa. Cmwlth. 2007) (noting that the primary purpose of a taxing authority is to "insure payment of taxes. Although selling of the property may end up being the ultimate means used toward achieving that end, it is not the end itself."). Section 39.2 of the MCTLA[4] mandates strict service requirements that the City must follow for a court to gain the jurisdiction necessary to authorize a sheriff's sale, including service of the petition and rule to show cause why the property should not be sold by "posting a true and correct copy of the petition and rule on the most public part of the property." 53 P.S. § 7193.2(a)(1); *City of Philadelphia v. Schaffer*, 974 A.2d 509,

---

[3] (*See* Motion to Redeem Property, ¶6 and Memorandum of Law at 9 ("Alternatively, Petitioner asserts that it was not properly served under the [MCTLA] and thus the Court was without jurisdiction").)

[4] Added by Act of December 14, 1993, P.L. 589.

512 (Pa. Cmwlth. 2009). Strict compliance with the service mandates of the MCTLA protects the procedural due process rights of all parties involved by guaranteeing that they receive notice and an opportunity to be heard and protects an owner against deprivation of his or her property without substantive due process of law. *Manu*, 76 A.3d at 606; *First Union National Bank v. F.A. Realty Investors Corp.*, 812 A.2d 719, 726 (Pa. Super. 2000); *see also Tracy v. Chester County, Tax Claim Bureau*, 489 A.2d 1334, 1339 (Pa. 1985). A sheriff's sale pursuant to the MCTLA is conducted under the auspices of the court and it is the court's duty to conduct an independent inquiry to ensure that the MCTLA has been complied with, and that the due process rights guaranteed by the Pennsylvania and United States Constitutions are adequately safeguarded.[5] *U.S. National Bank Association v. United Hands Community Land Trust*, __ A.3d __, __ (Pa. Cmwlth No. 2237 C.D. 2014, filed December 15, 2015), 2015 WL 8718035, slip op. at 5; *Manu*, 76 A.3d at 606.

In the instant matter, the Trial Court concluded that the service requirements of the MCTLA had been satisfied. (*See* Order, 10/1/14; Trial Court Opinion at 3.) In its Rule 1925(a) opinion, the Trial Court specifically stated:

> The City was merely required to serve Appellant with the Petition via first-class mail at its registered address, **as well as post the Petition upon the most prominent spot at the Property.** Appellant did both of these things, posting at the Property on December 16, 2013…The posting and multiple mailings established to this Court's satisfaction

---

[5] Article I, Section I of the Pennsylvania Constitution provides that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuit of their own happiness." Pa. Const. art. I, § 1. The 14th Amendment to the United States Constitution provides, in pertinent part, "nor shall any state deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1.

4

that Appellant had complied with the MCTLA's service and notice requirements.

(Trial Court Opinion at 6 (emphasis added).) The Trial Court's conclusion is not supported by the record. The affidavit of posting filed for the Property is insufficient to satisfy the specific mandate of the MCTLA and, under the unique facts of this case, violates Appellant's right to due process of law.

The affidavit of posting identified the papers served as "Petition Rule Returnable." (Affidavit of Posting, Reproduced Record (R.R.) at 176a.) Under various selections for the method of service, the affidavit has a check mark next to the words "Property Posted." (*Id*.) At the bottom of the affidavit, there is the signature of the server, Lieutenant Herbert, attesting to the fact of service accompanied by the date of his signature. (*Id*.) The document is otherwise bereft; it does not include the date, time, or place of posting or any other information concerning the Property or its posting. The record does not contain testimony from Lieutenant Herbert.

This Court reviewed the origins and application of the presumption of regularity to affidavits of service in *U.S. National Bank Association*, holding that the presumption did not apply to the acts of private process servers and therefore the testimony of the process server concerning his usual manner of posting, rather than his specific posting of the property at issue, was insufficient to demonstrate compliance with the MCTLA. *Id*. slip op. at 8. The presumption of regularity establishes *prima facie* evidence that a public official acts regularly in accordance with his or her official duties until evidence to the contrary appears. *See* 42 Pa. C.S. § 6104(a); *Hughes v. Chaplin*, 132 A.2d 200, 202 (Pa. 1957). Under this presumption, an affidavit of posting establishes that the actions disclosed therein were in fact taken. *U.S. National Bank Association*, slip op at 8. In accordance

5

with the presumption of regularity, the affidavit of posting in the instant matter establishes *prima facie* evidence that the Property was posted. However, under Section 39.2 of the MCTLA, evidence of mere posting is insufficient.

Like Section 39.2 of the MCTLA, Section 602 of the Real Estate Tax Sale Law[6] (RETSL), addresses service by posting and requires that "each property scheduled for sale shall be posted at least ten (10) days prior to sale." 72 P.S. § 5860.602. Although the RETSL does not contain language that prescribes an exact method or place of posting, due process requires that the method used "must be reasonable and such as would likely inform the taxpayer of the intended sale of the premises." *Thomas v. Montgomery County Tax Claim Bureau*, 553 A.2d 1044, 1046 (Pa. Cmwlth. 1989) (holding that a sheriff's affidavit stating the date and time the property was posted was sufficient to give rise to the presumption of regularity).

Relying upon the presumption of regularity, this Court held in *Barylak v. Montgomery County Tax Claim Bureau*, 74 A.3d 414 (Pa. Cmwlth. 2013), that a sheriff's affidavit containing the date and time of posting was sufficient evidence to establish proper posting under the RETSL, even though testimony in support of the affidavit was offered by a compliance coordinator for the taxing authority rather than the sheriff himself. *Id*. at 416-417. Similarly, in *Picknick v. Washington County Tax Claim Bureau*, 936 A.2d 1209 (Pa. Cmwlth. 2007), this Court held that an assessor's affidavit containing the date and time of posting, as well as photographs of the posted notice was sufficient to establish that service by posting had been perfected under the RETSL, even though testimony in support of

---

[6] Act of July 7, 1946, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

the affidavit was offered by an operations manager for the taxing authority rather than the assessor himself. *Id*. at 1213.

The presumption of regularity is a procedural expedient that is particularly suitable to tax sales, *Thomas,* 553 A.2d at 1046, but the presumption afforded a public official cannot overcome a statutory mandate. Unlike the RETSL, the statutory language in the MCTLA requires posting of "the petition and rule *on the most public part of the property*." 53 P.S. § 7193.2(a)(1) (emphasis added). There is no evidence in the record that the petition and rule were posted on the most public part of the Property. The record does not contain testimony from the server or from the taxing authority elucidating the general practice the Sheriff follows when posting properties under the MCTLA or specifically when posting vacant properties. Even under Section 602 of the RETSL, which does not specifically require posting on the most public part of the property, the presumption of regularity has never been applied to establish valid posting where an affidavit failed to include such basic information as the date and time of posting. Accordingly, there is no credible evidence of record to support the conclusion that the City complied with the posting requirement mandated by the MCTLA. *U.S. National Bank Association* held that the presumption of regularity cannot be applied to private individuals; the facts in this case demonstrate the limits of the application of the presumption of regularity to public officials.

The facts in this case also demonstrate the importance of posting where the taxing authority has knowledge that service has otherwise been ineffective. Our Supreme Court has termed the sale of private property for non-payment of taxes "a momentous event under the United States and Pennsylvania Constitutions," and while noting that the courts "hold no brief with willful, persistent and long standing tax delinquents," our Supreme Court has cautioned

7

that the collection of taxes may not be implemented without due process of law. *Tracy*, 489 A.2d at 1339.

In addition to posting the Property, the MCTLA mandates service by:

(2) By mailing by first class mail to the address registered by any interested party pursuant to section 39.1[7] of this act a true and correct copy of the petition and rule; and

(3) By reviewing a title search, title insurance policy or tax information certificate that identifies interested parties of record who have not registered their addresses pursuant to section 39.1 of this act, the city shall mail by first class mail and either by certified mail, return receipt requested, or by registered mail to such addresses as appear on the respective records relating to the premises a true and correct copy of the petition and rule.

53 P.S. § 7193.2(a)(2)-(3). The City was unable to serve Appellant by first class and certified mail.[8] Appellant did not register a notice of interest with the City. Although the deed identified Appellant as the owner of the Property, the address listed for Appellant was the prior address of a church elder. Appellant failed to provide the Office of the Recorder of Deeds with an updated address. The City was likewise unable to serve Appellant by first class and certified mail at the Property because the Property was vacant.

---

[7] Section 39.1(a) defines a "notice of interest" and provides that "Any owner of real property located within a city of the first class, any mortgagee thereof or any person having a lien or claim thereon or interest therein **shall register a notice of interest** with the department of the city of the first class responsible for collection of tax and municipal claims stating his name, residence and mailing address and a description of the real property in which the person has an interest. **A notice of interest shall not be required for any mortgage or interest otherwise properly recorded in the Office of the Recorder of Deeds provided the document contains a current address sufficient to satisfy the notice requirements of this section**. The interested party shall file an amended registration as needed." 53 P.S. § 7193.1(a) (emphasis added).

[8] (*See* James J. Zwolak, Esquire Affidavit of Service, R.R. at 31a; Certified Mail receipts, R.R. at 171a, 225a-228a, 269a-272a.)

The City's inability to perfect service by certified and first class mail made compliance with the posting mandate of the MCTLA all the more important, as did its knowledge that the Property was vacant. The City contends that this Court should focus instead on Appellant's failure to provide the Office of the Recorder of Deeds with updated address information or to register a notice of interest with the City Department of Revenue. Appellant argues that the City had *de facto* notice of its current contact address through Appellant's dealings with the Water Department, the Office of Property Assessment and payments to the Department of Revenue as a part of its development and storm water management plans for the Property.

The MCTLA places an obligation upon the taxpayer to safeguard his or her interests by registering updated contact information with the City. Appellant failed to satisfy this obligation. The MCTLA does not require the City to search through the records of each of its many Departments prior to initiating a Sheriff's sale to collect municipal taxes. Moreover, the record does not support Appellant's argument that the City had notice of the correct contact information for Appellant and failed to act upon it. Although the receipts and letters Appellant relies upon in support of its argument each reference the Property, the contact addresses, individuals, and named organizations differ.[9] Had the City searched the records of its many Departments and discovered these records, there was no basis to conclude which address was correct or that one of the many provided was more likely to

---

[9] For example, the Development Site Plan correspondence with the Philadelphia Water Department includes the Water Department's tracking number for the Property but contains contact information for "John Hopkins, PA#1 Regional Building Committee." (R.R. at 273a-306a.) Similarly, the check written to the Department of Revenue and the corresponding receipt for payment to the Water Department reference the Property but contain contact information for the "Wynnefeild Congregation of Jehovah's Witness Bldg Fund." (R.R. at 306a-307a.) Correspondence regarding an Application for Exemption from Act 537 Planning for the Property identifies yet another contact person, Mr. Maurice Duncan, and address. (R.R. at 308a.)

9

reach Appellant than the address on Appellant's deed. However, this conclusion does not obviate the need for the City to take real action to provide notice once it has knowledge that service by mail was inadequate.

There is no dispute that the MCTLA provided Appellant with not only an opportunity but an obligation to safeguard its interest in the Property, however, the ability of Appellant "to take steps to safeguard its interests does not relieve the [City] of its constitutional obligation." *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 799 (1983). The United States Supreme Court held in *Jones v. Flowers*, 547 U.S. 220, 234 (2006), that the right to due process guaranteed by the United States constitution requires that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id*. at 225. In defining what is reasonable, the Court reaffirmed that the government must "consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case," and must give attention to the "practicalities and peculiarities of the case" *Id*. at 230 (*citing Mullane v. Central Hanover & Bank Trust Co*., 339 U.S. 306, 314 (1950)); *see also Robinson v. Hanrahan*, 409 U.S. 38 (1972) (holding that a notice of forfeiture sent to an owner's home was inadequate when the state had knowledge that the owner was in prison); *Covey v Town of Somers*, 351 U.S. 141 (1956) (holding that notice of foreclosure by mailing, posting and publication was inadequate when the state had knowledge that the intended recipient was incompetent and without a guardian); *Tracy*, 489 A.2d at 1338-1339 (holding that where a taxing authority intends to conduct a sale of real property because of nonpayment of taxes and the mailed notice has not been delivered

10

because of an inaccurate address, the authority must make a reasonable effort to ascertain the identity and whereabouts of the owner.).

Each of the notices the City attempted to serve Appellant by mail are marked unclaimed or undeliverable.[10] Like the state in *Jones*, the City had knowledge prior to the tax sale that notice had not reached Appellant by mail. 547 U.S. at 231. Like the state in *Jones*, the City did not take additional reasonable steps to attempt to provide notice to Appellant. *Id*. at 234. While Appellant's argument that the City should have searched the records of each of its Departments in an attempt to provide Appellant with notice is unpersuasive on this record, the City had less onerous options available to it once it had knowledge that notice had not reached Appellant by mail. In *Jones*, while declining to prescribe specific forms of service a state should adopt, the Court identified posting as one of the additional reasonable steps the state could have taken once it had knowledge that service through the mail was ineffective.[11] *Id*. at 236. In a first class city in this Commonwealth, proper posting is not only an additional reasonable step that

---

[10] (*See* Certified Mail Receipts, R.R. at 171a, 269a-272a.)

[11] Other reasonable steps identified by the Court in *Jones* that the taxing authority could have taken once it was aware that service through the mail was undeliverable include posting the front door of the last known address or sending notice addressed simply to "occupant." *Id.* at 234-235. Under the unique facts of this case, *St. George Antiochian Christian Church v. Aggarwal*, 603 A.2d 484 (Md. 1992), which concerns the sale of property owned by a church to recoup back taxes, is particularly instructive regarding additional reasonable steps a taxing authority could take to provide notice. In *St. George*, the property at issue was vacant, the deed to the property did not contain the correct address for the church, and notice of the tax sale had been sent through the mail and returned as undeliverable. *Id*. at 485, 488. The Maryland Court of Appeals held that, having learned service through the mail to the address on the deed was undeliverable, an additional reasonable step would have been to contact the title company that handled transfer of the property to the church only a few years before, whose contact information, as in the instant matter, was readily available from the face of the deed. *Id*. at 491. In *Fernandez*, this Court addressed what constitutes a reasonable investigation under the RETSL, defining a reasonable investigation as "one that uses ordinary common sense business practices to ascertain proper addresses." *Fernandez,* 925 A.2d at 213 (internal citations omitted).

11

should be taken to adequately safeguard constitutional due process once a municipal authority has knowledge that service through the mail was ineffective, but a basic and longstanding statutory obligation.

There is no overestimating the great challenges facing the City in its efforts to collect municipal taxes. In recognition of that challenge, the City was granted the power to take private property, a power so extraordinary under our system of governance that it is constitutionally restrained. In accordance with this constitutional restraint, the General Assembly established strict procedural requirements that a municipality must follow to exercise its power to take private property from one and sell it to another. The momentous nature of the act of taking property from one and selling it to another to collect municipal taxes likewise requires the courts to examine the record in a sheriff's sale with a close, independent and vigorous eye to ensure that the procedural requirements for notice of the sale have been adhered to and due process of law has been adequately safeguarded. The Trial Court had a duty to conduct an independent inquiry to ascertain if the City had fulfilled its statutory and constitutional obligations; by failing to do so here, the Trial Court abused its discretion, and by relying on facts not in evidence, the Trial Court erred as a matter of law in concluding that it gained jurisdiction to authorize the sale of the Property for the collection of municipal taxes.

Accordingly, the order of the Trial Court is reversed and the tax sale is set aside.

**JAMES GARDNER COLINS, Senior Judge**

12

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| City of Philadelphia | : |
| | : |
| v. | : No. 264 C.D. 2015 |
| | : |
| Morris Park Congregation of | : |
| Jehovah's Witnesses, | : |
| | : |
| Appellant | : |

# **O R D E R**

AND NOW this 7th day of March, 2016, the order of the Philadelphia County Court of Common Pleas in the above-captioned matter is REVERSED.

_____
**JAMES GARDNER COLINS, Senior Judge**