636 A.2d 1

Edward J. SLATTERY, Jr., et al.

v.

Alan M. FRIEDMAN.

No. 276, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Jan. 26, 1994.

Certiorari Denied June 6, 1994.

Clyde H. Sorrell, Bethesda, argued (Susan Berg, Washington, DC, on the brief), for appellants.

Hillel Abrams, Rockville, argued, for appellee.

Argued before MOYLAN, WENNER and FISCHER, JJ.

WENNER, Judge.

The genesis of this appeal is the entry of a judgment of foreclosure of the rights of appellants, Edward J. Slattery, Jr., Nancee C. Slattery, Thomas M. Slattery, and Nancy B. Slattery (the Slatterys), to redeem property purchased at a Montgomery County tax sale by appellee, Alan Friedman (Friedman). Friedman's attempts to notify the Slatterys of the filing of his complaint to foreclose their rights of redemption,

both by mail and by personal service, were unsuccessful. Thus, the circuit court entered judgment of foreclosure in favor of Friedman without the Slatterys' knowledge. After the Slatterys' motion to vacate the judgment was denied by the Circuit Court for Montgomery County, this appeal was noted. We have restated the issues presented on appeal by the Slatterys:

I. Whether Friedman's attempts to serve the Slatterys with a copy of the complaint for foreclosure of the Slatterys' right of redemption satisfied the requirements set forth in Maryland Code, Tax–Property Article, § 14–839.

II. Whether, when the balance of the purchase price and any further taxes due are not paid within 90 days following entry of the judgment of foreclosure as required by Maryland Code, Tax–Property Article, § 14–847(d), but are paid before a motion to vacate is filed, the court retains power to reopen a judgment of foreclosure under that section.

For the reasons set forth below, we shall vacate the judgment and remand this case to the circuit court for further proceedings.[1]

### Facts

In July 1974 the Slatterys purchased Parcel 26, Block 23, "CAPITAL VIEW PARK", designated as 3108 Lee Street in Silver Spring, Montgomery County, Maryland (the property).[2] The tax account number for Parcel 26, Block 23 was 995230. Shortly after the Slatterys had purchased the property, they learned that the Maryland National Capital Park and Planning

---

**1.** The Slatterys also question whether, if Friedman complied with the statutory requirements, notice was sufficient to satisfy constitutional due process. As we shall remand this case to the circuit court to determine the threshold issue, we need not reach the constitutional issue.

**2.** The Slatterys have provided us with this description of the property, although the deed to the Slatterys contains only a metes and bounds description.

Commission (MNCPPC) had a proposed plan to straighten Capital View Avenue, cutting through the middle of Parcel 26, Block 23. Thomas Slattery wrote the MNCPPC, explaining that the Slatterys had intended to subdivide the property, and that this was now not possible. He therefore sought to have "all or a reasonable part of the land described above be placed in reservation with commensurate relief from tax payments."

MNCPPC approved his request, and a plat entitled "RELO-CATION CAPITAL VIEW AVENUE" was prepared and placed on record. The proposed relocation of Capital View Avenue was designated on the plat as "Parcel B" and placed in reservation for public use pursuant to Montgomery County Code Sec. 50–31. Section 50–31, subsection (a)(3) provides:

Taxes. The board shall advise taxing and assessing bodies of all public reservations, and such public reservations shall be exempt from all state, county and local taxes during the reservation period.

Parcel B was assigned tax account number 1705866, was designated tax-exempt, and remained in reservation for nine years. The remainder of the Slatterys' property, which we shall call "Parcel A," consisted of a parcel on each side of Parcel B and retained tax account number 995230.

In 1974, Thomas Slattery's mailing address was 10201 Meredith Avenue, Silver Spring, Maryland, the return address that appears on the deed to the Slatterys. It is not clear to us whether this address was ever entered on the tax rolls of Montgomery County. We do know, however, that at the time Parcel B was removed from reservation in 1984, the tax roll for Parcel B contained an incorrect mailing address for the Slatterys—600 Broadwood Drive, Rockville, Maryland.

According to the Slatterys, 600 Broadwood Drive, Rockville, Maryland had at one time been entered as their address on the initial tax account number for the property, the number now assigned to Parcel A. Although the Slatterys' mailing address for Parcel A had been corrected, their mailing address for Parcel B had not. We have not, however, been provided with any information about when entry of the incorrect mail-

ing address was made or discovered; how it was discovered; when and by whom it was discovered; at what point or by whom it was corrected for Parcel A; and what the Slatterys' correct mailing address was at that time.

In any case, the taxes for Parcel B were not paid in 1984. In June of 1985, Friedman purchased Parcel B at tax sale for $3000, and paid the overdue taxes—$136.60. Friedman was not required to pay the remainder until the Slatterys' right to redeem Parcel B was foreclosed.[3] In June of 1987, Friedman filed a complaint in the Circuit Court for Montgomery County seeking to foreclose the Slatterys' right of redemption.

Friedman sent a copy of the complaint by certified mail, return receipt requested, to each of the Slatterys at 10201 Meredith Avenue, Silver Spring, Maryland 20901; and at 600 Broadwood Drive, Rockville, Maryland 20850. All of the letters were returned marked "undeliverable." Friedman then attempted to have summonses served upon Edward and Nancee Slattery at the Meredith Avenue address; the summonses were returned *non-est.* Friedman also attempted to have summonses served upon Thomas and Nancy Slattery at the Broadwood Avenue address. These summonses were also returned *non-est.* Finally, Friedman attempted to serve all of the Slatterys at the Broadwood Avenue address, and these summons were returned *non-est.* On November 5, 1987, judgment was entered in favor of Friedman, foreclosing the Slatterys' right of redemption and vesting fee simple title to Parcel B in Friedman. Nevertheless, Friedman failed to pay the balance due from the tax sale.

The Slatterys contend that when Parcel B was removed from reservation, the collector of taxes should have consolidated Parcels A and B and re-assigned tax account number 995230 to Parcel B. According to the Slatterys, they believed this had been done, did not expect to receive a tax bill for Parcel B, and believed they were paying taxes on the entire

---

**3.** The Slatterys were entitled to redeem Parcel B paying Friedman the delinquent taxes, plus interest.

property in 1984 and subsequent years. The Slatterys assert that they first learned in late February of 1989 that Parcel B had been sold at tax sale, upon receiving a call from one William Gries of the MNCPPC.

On May 5, 1989, Friedman paid the balance due from the tax sale. On May 11, 1989, the Slatterys moved to Strike Final Judgment. On October 31, 1990, the Slatterys' filed an Amended Motion of Interested Parties to Strike and/or Vacate Final Judgment. The amended motion was denied on January 2, 1991.

## The Statutory Scheme

Maryland Code, Tax–Property Article, Title 14, Subtitle 8, Part III (§§ 14–808 through 14–854) (1986, 1992 Cum.Supp.), provides the procedure for a tax sale.[4] Notice is given to the owner at the last address shown on the tax roll, § 14–812, and by publication. § 14–813. Sale is to the highest bidder at public auction. The successful bidder is required to pay an amount sufficient to cover taxes due on the property, interest, penalties, and sale expenses on the date of the sale; the remainder need not be paid until the owner's right of redemption has been foreclosed. §§ 14–817, 14–818. The successful bidder receives an assignable certificate of sale setting forth the bidder's rights. § 14–820. The property may be redeemed by the owner until the owner's right of redemption has been foreclosed. §§ 14–827, 14–828, 14–820(b).

With certain exceptions, the holder of the certificate of sale may petition the circuit court to foreclose the owner's right of redemption within two years from the tax sale. § 14–833. The holder of the certificate of sale is the plaintiff; the owner of the property and the owner of the leasehold title, mortgagees, and trustees under deeds of trust recorded against the property, if any, are defendants. § 14–836. Service is made

---

4. Unless otherwise noted, all further references will be to the Tax–Property Article.

upon the defendants according to § 14-839, which reads in pertinent part:

(a) *Notice to defendants.*—(1) The plaintiff shall show in the title of the complaint the last address known to the plaintiff or to the attorney filing the complaint of each defendant, as obtained from:

(i) any records examined as part of the title examination;

(ii) the tax rolls of the collector who made the sale, as to the property described in the complaint; and

(iii) any other address that is known to the plaintiff or the attorney filing the complaint.

(2) Paragraph (1) of this subsection does not require the plaintiff or the attorney for the plaintiff to make any investigations or to search any other records or sources of information other than those stated.

. . . .

(b) *Same—Declared reasonable and sufficient.*—The provisions of this section as to notice to persons who may have an interest in property sold for nonpayment of taxes, coupled with the order of publication and the other publicity and notices as ordinarily accompanies the sale of such property, as well as the knowledge of the taxes and the consequences for nonpayment of the taxes is declared:

(1) to be reasonable and sufficient under all of the circumstances involved, and necessary in light of the compelling need for prompt collection of taxes; and

(2) to supersede any other requirement in other cases or civil causes generally.

Notice that a petition for foreclosure has been filed is published when the summons is issued. § 14-840. A final judgment foreclosing the owner's right of redemption and vesting fee simple title in the plaintiff is entered after the limit set in the order of publication and time to respond to the summons have expired. § 14-844. The judgment may be reopened only on the ground of lack of jurisdiction or of fraud in the conduct of the foreclosure proceeding. No judgment may be reopened on the ground of constructive fraud unless an application to

reopen the judgment is filed within one year from the date of judgment.  § 14–845.

The judgment foreclosing the owner's right of redemption requires the holder of the certificate of sale to pay the balance of the purchase price, together with all taxes, interest and penalties accruing from the date of sale.  Once payment has been made, the collector of taxes is required to convey the property to the holder of the certificate of sale.  § 14–847(a). If the required payment is not made within 90 days, the court may strike the judgment for good cause shown upon motion of an interested party.  § 14–847(d).

### The Case Law

In *St. George Antiochian Orthodox Christian Church v. Aggarwal,* 326 Md. 90, 101–04, 603 A.2d 484 (1992),[5] the Court of Appeals applied the standard of actual knowledge set forth in *Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992), to the requirement that notice to defendants be sent to any address "known to the plaintiff or the attorney filing the complaint."  The Court concluded that where

> the plaintiff or his attorney becomes aware that the address given on the tax rolls is a "bad address," i.e., is not a correct address for the owner of the property, the plaintiff and his attorney will be held to "know" an address of the owner within the meaning of the statute when, except for manifest indifference to information shown in the land records or the tax rolls, they would have actually discovered that address.

*Aggarwal,* 326 Md. at 203, 603 A.2d 484.  With respect to the title examination required by § 14–839(a)(1)(i), the Court said, "[m]erely relying upon a conventional title abstract may not be sufficient, at least where a question has arisen concerning the validity of the address appearing in the tax rolls," *id.,* because "[a]n ordinary title abstract is generally concerned with the validity of title and incumbrances against the property, and

---

5. The Slatterys noted this appeal on January 31, 1991, but agreed not to pursue it pending the outcome of *Aggarwal.*  The Court of Appeals had granted certiorari for *Aggarwal* on December 28, 1990.

not necessarily with information contained in the land records that would shed light on the address of the last owner." *Id.*

In *Aggarwal,* a parcel of unimproved property was donated to a church. The church mistakenly believed that the property was exempt from taxes, and was not aware that tax bills were being sent to the address of the vacant lot. Hence, the taxes were not paid, and the property was sold at tax sale. Aggarwal purchased the property at tax sale and used the address found on the tax rolls, *i.e.* the address of the vacant lot, when attempting to serve the church with notice of his petition to foreclose the church's right of redemption. Judgment was entered in favor of Aggarwal in June of 1987. The church learned of the tax sale nearly two years later, and moved to reopen the judgment.

Although the deed by which the church obtained the property did not contain the church's address, it contained the name of the title company that had handled the transaction. The Court of Appeals concluded that Aggarwal's failure to contact the title company seeking the church's address was "at least the type of manifest indifference which we have held cannot be countenanced without offending concepts of due process in a case of this kind." *Id.* at 104, 603 A.2d 484. Thus, under § 14–839(a), Aggarwal's attorney was deemed to have "known" the church's address. Consequently, Aggarwal's failure to serve notice on the church "resulted in the court not acquiring jurisdiction of the person of the defendant, and necessitat[ed] vacating the order foreclosing the right of redemption." *Id.*

Subsequent to *Aggarwal,* we decided two cases addressing under what circumstances a plaintiff seeking to foreclose the owner's right of redemption, or his/her attorney, will be deemed to "know" an owner's address within the meaning of § 14–839. In *Kennedy v. Cummings,* 91 Md.App. 21, 603 A.2d 1251 (1992), the defendants, although paying municipal taxes, did not realize that they were obligated to pay county taxes after their property had been annexed into the Town of Indian Head. Inasmuch as the county failed to update its tax

rolls, and its tax rolls did not contain the address of the Cummings' property following annexation, service mailed to the Cummings' former address was returned "Moved—Not Forwardable."

Kennedy contended that the title examination required by § 14–839 and that required by § 14–836 are the same. Section 14–836, entitled "Defendants," provides that the record title holder is to be determined from a search of the county land records, the records of the register of wills of the county, and the records of the circuit court for the county. Kennedy therefore believed that he was not required to examine the municipal tax records in an effort to obtain the Cummings' address. We noted, however, that although § 14–836 contains three sources from which a defendant's *name* is to be determined, § 14–839(a) requires the plaintiff to show in the title of the complaint the defendant's last known *address* as obtained from *any records examined as part of the title examination.* We found this search to be of a broader scope than that contained in § 14–836 and that it encompasses any records found in a title examination performed in accordance with generally accepted standards of title examination.[6] *Kennedy,* 91 Md.App. at 31, 603 A.2d 1251. We then held that generally accepted standards of title examination require an examination of municipal tax records when the property is within municipal boundaries. *Id.* at 31–32, 603 A.2d 1251.

In *Scott v. Seek Lane Venture, Inc.,* 91 Md.App. 668, 605 A.2d 942, *cert. denied,* 327 Md. 626, 612 A.2d 257 (1992), Scott

---

6. We found support for this in *Seidel v. Pannella,* 81 Md.App. 124, 567 A.2d 134 (1989), *cert. denied,* 319 Md. 72, 570 A.2d 864 (1990). In *Seidel,* appellants averred that their correct address could have been ascertained from the records of the Worcester County Sanitary District; the records of the Ocean City Water Department; and the records of the Montego Bay Civic Association, which, as disclosed in its recorded covenants, collected an annual maintenance fee on the property. The appellants asserted that the title search required by § 14–839 should have included an examination of these three sources. *Id.* 81 Md.App. at 132, 567 A.2d 134. Although we did not differentiate these allegations from other allegations of procedural defects, we concluded that "[t]he sum of appellants' allegations, if proven to the satisfaction of the trial court, is sufficient to constitute constructive fraud." *Id.*

purchased a property at tax sale owned by Seek Lane Venture, Inc. (Seek Lane). Seek Lane, having forfeited its charter, was a defunct corporation. Despite knowing that Seek Lane was defunct, Scott mailed notice of her petition to foreclose Seek Lane's right of redemption to a post office box address obtained from the land records. It was returned as undeliverable. We affirmed the trial court's determination that this was not proper service.

We explained that once a corporation has forfeited its charter, it is no longer in existence and can no longer be sued. We went on to explain that the assets of a defunct corporation are automatically transferred to the corporation's directors as trustees for the purpose of liquidation; thus, Seek Lane's directors-trustees were the appropriate defendants. Although a complaint may be filed against the directors-trustees in the name of the defunct corporation the directors-trustees must be given notice. We said that "[s]ince Scott had actual knowledge of the non-existence of the corporate entity, she was required to undertake a reasonable search for the identity of the directors-trustees." *Id.* 91 Md.App. at 687, 605 A.2d 942. Because that information was "readily available" in the corporate records of the Circuit Court for Montgomery County, we concluded that Scott's failure to search those records "constituted a willful refusal to know." *Id.* at 688, 605 A.2d 942.

*Analysis*

I.

The Slatterys first contend that Friedman's efforts to serve them notice of his complaint to foreclose their right of redemption were inadequate under § 14–839. We begin by recognizing that there are two significant competing interests involved in a case of this sort. *Aggarwal,* 326 Md. at 92, 603 A.2d 484. While the owner is entitled to due process before being deprived of his or her property rights, the state has a significant interest in the integrity of the tax sale process and its ability to provide tax sale purchasers with marketable

titles. *Id.* We also recognize that the holder of the certificate of sale has little incentive to locate the owners of the property, and will often benefit if the owners are not located. *Aggarwal,* 326 Md. at 96, 603 A.2d 484; *Kennedy,* 91 Md.App. at 31, 603 A.2d 1251; *Scott,* 91 Md.App. at 683–84, 605 A.2d 942.

*Aggarwal, Kennedy,* and *Scott* make it clear that the title examination required by § 14–839(a)(1)(i) must have the *objective* of ascertaining the correct address of the owners. Not only must the holder of the certificate of sale consider addresses found in the land records, any information in those records that could reasonably lead to the owner's correct address must be pursued.

It is possible that information derived from the 1974 deed to the Slatterys; the plat designated 'RELOCATION CAPITAL VIEW AVENUE' showing the division of the property into Parcels A and B; and the property tax roll for Parcel A, presumably containing the Slatterys' correct mailing address, might lead to the conclusion that Friedman did not find the Slatterys' correct address because of his manifest indifference to doing so. If that be the case, the Slatterys are entitled to have the judgment of foreclosure reopened on the grounds that the circuit court lacked personal jurisdiction over them when the judgment was entered.

We hasten to point out that the case *sub judice* does not involve two separate properties owned by the same party. The Slatterys acquired the property as one parcel by a single deed. This is the last recorded deed referring to the property. A plat dividing the property into Parcels A and B was later recorded. Although Parcel B was placed in reservation, designated as tax-exempt, and given a new tax account number, Parcel A continued to be taxable and retained the original tax account number. The records before us contain nothing indicating a change in the ownership of either parcel. In short, we believe that the holder of a certificate of sale should not be allowed to ignore information that may be derived from the last recorded conveyance of the property.

We emphasize that we are not requiring the holder of a certificate of sale to go outside of the chain of title, nor are we requiring an exhaustive examination of the tax rolls. We observe that the holder of a certificate of sale is charged with knowledge of information obtained from "the tax rolls of the collector who made the sale, as to the property described in the complaint." § 14–839(a)(1)(ii). The limitation of the required examination of the tax rolls to "the property described in the complaint" makes it clear that the holder of the certificate of sale is not required to notify all persons on the tax rolls with the same name as that of the owners, without evidence that such persons have any connection whatever with the property purchased at tax sale.

We do not believe, however, that § 14–839(a)(1)(ii) permits the holder of the certificate of sale to avoid pursuing information that the title examination required by § 14–839(a)(1)(i) indicates might lead to the owner's correct address simply because it involves examining the "tax rolls." Instead, an examination of the tax rolls should extend beyond that required by § 14–839(a)(1)(ii) when such an examination is an appropriate follow-up to "information contained in the land records that would shed light on the address of the last owner." *Aggarwal,* 326 Md. at 103, 603 A.2d 484.

Nonetheless, we cannot at this point hold, as a matter of law, that Friedman was manifestly indifferent to the Slatterys' correct address. A review of the plat designated "Relocation Capital View Avenue" and the tax rolls containing Parcels A and B may indicate that Friedman was manifestly indifferent to information leading to the Slatterys' correct address. It may also be that the records do not lead to their correct address as clearly as the Slatterys would have us believe. This can be determined only by the trial court once the proper evidence [7] is before it.

---

7. At a minimum, appropriate evidence would consist of the plat designated "Relocation Capital View Avenue," and the tax rolls containing Parcels A and B at the time notice of Friedman's petition for foreclosure was to be given. Other helpful evidence may also be found.

■ Consequently, we shall remand this case to the Circuit Court for Montgomery County so that it can determine whether a title examination performed in accordance with generally accepted principles of title examination would have revealed any information from which Friedman or his attorney could reasonably have ascertained the Slatterys' correct mailing address.[8] If the answer is affirmative, the judgment foreclosing the Slatterys' right of redemption should be vacated for lack of personal jurisdiction.

## II.

■ The Slatterys next contend that, even if Friedman's attempts to give them notice satisfied § 14–839, they are entitled to petition the court to strike the judgment of foreclosure under § 14–847(d). In accordance with § 14–847(a), the judgment foreclosing the Slatterys' right of redemption, which was entered on November 5, 1987, required Friedman to pay the balance due from the tax sale in order to obtain a deed from the tax collector. Section 14–847(d) provides:

> If the holder of the certificate does not comply with the terms of the final judgment of the court within 90 days as to payments to the collector of the balance of the purchase price due on account of the purchase price of the property

---

8. Having said that, we think it interesting to note that a few areas given much attention by the parties' in their briefs are not relevant to the issue at hand.

First is the failure of the Slatterys to ensure that the taxes on Parcel B were being paid after it was no longer tax-exempt. Whether the mix-up leading to the nonpayment of taxes was the fault of the Slatterys' is not germane to determining whether Friedman's actions amount to a manifest indifference to ascertaining the Slatterys' correct address.

Nor is it relevant that the Slatterys initially requested that Parcel B be placed in reservation. This was prompted by the Slatterys' discovery that their property would be ineligible for development. The Slatterys' request was approved by the county, imputing no culpability to the Slatterys.

On the other hand, neither is it relevant that Thomas Slattery has been listed in the Northern Virginia phone directory since 1978. The holder of the certificate of sale is not charged with making a general search of phone company records, motor vehicle records, voter registration records, or the like when seeking the owner's address.

and of all taxes, interest, and penalties that accrue after the date of sale, that judgment may be stricken by the court on the motion of an interested party for good cause shown.

As we noted, Friedman did not pay the balance due until eighteen months after the judgment was entered. The Slatterys imply that payment was made then only because Friedman had learned of the Slatterys' inquiries. Notwithstanding its coincidental timing, Friedman's payment was made before the Slatterys' initial Motion to Vacate the Judgment of Foreclosure was filed.[9]

At the hearing on the Slatterys' Motion to Vacate the Judgment of Foreclosure, Friedman's attorney asserted that "[§] 14–847d was passed specifically at the request of Montgomery County, the County Attorney's Office, for the sole purpose of trying to force people to get the deed after the final judgment." Yet, the Court of Appeals has made clear that the owners of the property are entitled to avail themselves of this provision. In *Hardisty v. Kay*, 268 Md. 202, 299 A.2d 771 (1973),[10] Hardisty refused to pay the balance due after the judgment of foreclosure was entered. As owners of property, the Kays were entitled to the surplus of the purchase price, and were successful in obtaining a judgment against Hardisty for this amount. In affirming the judgment, the Court of Appeals addressed Hardisty's assertion that the Kays' only remedy was to have the judgment stricken under the provision now contained in § 14–847(d). The Court said:

> While we agree that the "interested party" mentioned in the statute refers to the owner of the land at the time of the sale or anyone claiming rights through him, not including, however, the purchaser of the certificate, his heirs or assigns, that is as far as our agreement with appellant extends. Unlike Hardisty, we construe this statute to provide

---

9. We are not told, however, whether Friedman ever obtained a deed from the collector.

10. We note with interest that Friedman's attorney was also the Kays' attorney.

an additional, not an exclusive, remedy to a person in the position of appellees.

*Id.* at 211, 299 A.2d 771. In addition to permitting the collector of taxes to have such a judgment set aside if payment is not made as required, § 14–847(d) provides a method distinct from § 14–845 for the owners of the property to have the judgment foreclosing their right of redemption reopened.

According to the Slatterys, as Friedman did not pay the balance due within 90 days from the date of the judgment, the judgment should be reopened pursuant to § 14–847(d). Implicit in this contention is the premise that the circuit court may reopen a judgment of foreclosure under § 14–847(d) whenever the balance due remains unpaid past the 90th day, even though it may be paid later.

On the other hand, Friedman contends that the circuit court may not reopen the judgment under § 14–847(d) once the balance due is paid, even though not paid within 90 days from the date of the judgment. Friedman interprets the exception created by § 14–847(d) as permitting the judgment to be reopened only when "the application to reopen is filed after 90 days of the entry of the judgment but before payment is made to the collector of the balance of the purchase price due, with taxes." In support of this interpretation, Friedman contends that:

> If [the] Slatterys' view of § 14–847(d) were to be given credence, no tax deed title obtained more than 90 days after the entry of the judgment would be "marketable" within the meaning of § 14–832. Such a holding would undermine the entire legislative intent, discourage rather than encourage the foreclosure of rights of redemption and render a tax deed unmarketable and definitely uninsurable.

We agree with Friedman. Section 14–832 expressly provides that §§ 14–832.1 through 14–854, relating to foreclosure of the right of redemption, "shall be liberally construed as remedial legislation to encourage the foreclosure of rights of redemption by suits in the circuit courts and for the decreeing of marketable titles to property sold by the collector." This

has long been understood as a "declaration by the General Assembly 'that the public interest in marketable titles to property purchased at tax sales outweighs considerations of individual hardship in every case, except upon a showing of lack of jurisdiction or fraud in the conduct of the foreclosure.' " *Arnold v. Carafides,* 282 Md. 375, 377, 384 A.2d 729 (1978) (quoting *Thomas v. Kolker,* 195 Md. 470, 475, 73 A.2d 886 (1950)).

■ With this clear expression of legislative intent before us, we reject the Slatterys' interpretation of § 14–847(d). To accept the Slatterys' interpretation would imbue title received from the collector of taxes by a slightly dilatory holder of a certificate of sale with an uncertainty not intended by the legislature. Instead, §§ 14–845 and 14–847(d) must be read in conjunction with one another. Hence, during the time that the holder of the certificate has not complied with § 14–847(d), that is, between 90 days after the judgment of foreclosure was entered and payment of the balance due, the owner may petition the court under § 14–847(d) to reopen the judgment, so long as the balance due remains unpaid. After payment of the balance due, however, the judgment may be reopened only pursuant to § 14–845, *i.e.,* on the grounds of fraud or lack of jurisdiction, regardless of whether the payment was made after the petition was filed.[11]

**JUDGMENT VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

---

11. This is not to say, however, that *at a time when the certificate holder is not in compliance with the judgment,* a court may not consider lack of actual notice, whether or not involving a failure to comply with § 14–839, as a factor in determining whether there is good cause to strike the judgment.