684 A.2d 861

James P. NICHOL et al.

v.

Myrel A. HOWARD.

No. 49, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Nov. 7, 1996.

Clyde H. Sorrell, Bethesda (Robert M. Burke and Mudd, Mudd & Fitzgerald, P.A., La Plata, on the brief), for Appellants.

Karen H. Abrams, Leonardtown, for Appellee.

Argued before MOYLAN, CATHELL and BISHOP, JOHN J., Jr. (retired, specially assigned), JJ.

CATHELL, Judge.

John P. Nichol and Francis L. Nichol appeal from a denial of their Motion to Set Aside Final Judgment and to Fix Amount Necessary for Redemption in respect to a Complaint to Foreclose Rights of Redemption and the subsequent foreclosure of this right by the Circuit Court for Charles County. Appellee, the tax sale purchaser and complainant, is Myrel A. Howard.

The Nichols present two questions:

1. Did Howard comply with the Notice requirements of Section 14–839 of the Tax Property Article of the Annotated Code of Maryland in obtaining his Decree Foreclosing Rights of Redemption with regard to the Nichols' property?

2.   Even assuming the statutory requirements were met, was the notice given under the circumstance of this case sufficient to satisfy constitutional due process?

They present a multifaceted argument:

I.   The trial court erred in denying the Nichols' Motion to Set Aside Final Judgment and to Fix Amount Necessary for Redemption because Howard "knew" the Nichols' address yet failed to give them notice.

A.   Failure to pursue reasonable leads

1.   Name and Address of Title Company

2.   Name and Address of Mortgage Company

3.   Rental Property Information

II.   The trial court erred in denying the Motion to Set Aside Final Judgment and to fix amount necessary for redemption because Howard committed constructive fraud against the Nichols in the conduct of the foreclosure proceedings.

III.   The trial court erred in denying the Motion to Set Aside Final Judgment and to Fix Amount Necessary for Redemption because even if the statutory requirements were met, the notice given under these circumstances was not sufficient to satisfy constitutional due process.

We are tempted to address these arguments through extensive legal analysis of the State's notice statute and how it should be applied to the facts. We are, likewise, tempted, when addressing these arguments and the facts in the case *sub judice,* to review extensively the federal constitutional cases on due process and apply the facts of this case to that analysis and, as a result, affirm the trial judge.

But in the vernacular of the moment, we have been there and done that. Our prior effort at such an undertaking, *St. George Antiochian Orthodox Christian Church v. Aggarwal,* 83 Md.App. 599, 576 A.2d 224 (1990), was reversed by the *Court of Appeals, St. George Antiochian Orthodox Christian Church v. Aggarwal,* 326 Md. 90, 603 A.2d 484 (1992). The

Court of Appeals's *Aggarwal,* and its progeny, make clear that we must reverse.

We first furnish the relevant facts, simplifying them when possible. We shall refer to appellants as "owner" and appellee, the tax sale purchaser, his attorney, and their title abstractor collectively as "purchaser."

## The Facts

Owner had title to property in Charles County that, at all times relevant hereto, was rented out to others. At a prior time, owner had lived on the subject property and that address was the address contained in the various relevant tax records and rolls in Charles County.

Owner moved from the property to a Manassas, Virginia address, in 1990. He refinanced the property, in 1993, with Financial Mortgage, Inc., a Virginia company, which then assigned that mortgage to Barclay's American Mortgage Corp., a North Carolina company.[1] At the time of recordation of the mortgage documents, various rental riders, relating to permission to rent, and an assignment of rents were either contained in or attached to the documents as recorded in the Land Records of Charles County.

When the taxes were not paid, purchaser bought the property (and other unrelated properties) at a tax sale. Subsequently, as we have indicated, purchaser filed a Complaint to Foreclose the Right of Redemption of owner. He mailed the required mortgagee's notice[2] to both financial institutions at their actual addresses. He mailed a notice required by the statute to the owner at the address contained in the tax records for the property itself. This notice was returned stamped "Return to Sender." No attempt was made to effectuate personal service at the property's address, nor was

---

1. At the time of the tax sale, both mortgage companies were licensed in Maryland. Financial Mortgage, Inc., remains licensed in Maryland.

2. The Maryland notice statute, *infra,* requires a purchaser to notify mortgagees separately.

any personal inquiry made of the occupants of the property, owner's tenants, regarding the address of the owners or as to where the tenants mailed their rent. Moreover, no inquiry was made of the two mortgagees as to the address where they mailed payment notices, premium books, escrow accounts and other correspondence to owner. Similarly, no other efforts at personal service were made. Purchaser thereafter proceeded solely by publication.

We note that we, in our *Aggarwal* opinion, upheld the constitutionality of the Maryland notice statute, 83 Md.App. at 611, 576 A.2d 224, and the Court of Appeals agreed with that portion of our opinion, see 326 Md. at 98, 603 A.2d 484. We further hasten to add that appellee complied with the literal language of the statute—as did Mr. Aggarwal.

Section 14-839 of the Maryland Code (1985, 1994 Repl. Vol.), Tax–Property Article, provides in relevant part:

(a) *Notice to defendants.*—(1) The plaintiff shall show in the title of the complaint the last address *known* to the plaintiff or to the attorney filing the complaint of each defendant, as obtained from:

(i) any records examined as part of the title examination;

(ii) the tax rolls of the collector who made the sale, as to the property described in the complaint; and

(iii) any other address that is known to the plaintiff or the attorney filing the complaint.

(2) Paragraph (1) of this subsection does not require the plaintiff or the attorney for the plaintiff to make any investigations or to search any other records or sources of information other than those stated.

. . . .

(b) *Same—Declared reasonable and sufficient.*—The provisions of this section as to notice to persons who may have an interest in property sold for nonpayment of taxes, coupled with the order of publication and the other publicity and notices as ordinarily accompanies the sale of such property, as well as the knowledge of the taxes and the consequences for nonpayment of the taxes is declared:

(1) to be reasonable and sufficient under all of the circumstances involved, and necessary in light of the compelling need for the prompt collection of taxes; and

(2) to supersede any other requirement in other cases or civil causes generally. [We have emphasized the word "known."]

As we have indicated, appellee complied with the *stated* requirements of the statute. That, however, under some circumstances, may not be enough. The Court of Appeals has defined the term "known" very broadly.

We noted in our *Aggarwal* opinion that Aggarwal, the purchaser at the tax sale, had

searched the title to the property; . . . the telephone books of the jurisdiction wherein the land lies; . . . contacted the Maryland Department of Assessments and Taxation for addresses; . . . mailed copies of the bill and summons to the address contained in the tax records which were directed to appellant; . . . mailed a notice to the address contained in the tax records directed to "occupant"; and he wrote the postmaster for an address. . . . While actual personal service was not obtained, appellee made diligent efforts in an attempt to effectuate such service. . . .

83 Md.App. at 607, 576 A.2d 224. We later noted the church's position

that because its title insurer's address was contained on the deed in the land records, the appellee could have contacted the title company and would have been able to obtain from that company the address of the Church.

*Id.* at 615, 576 A.2d 224.

We affirmed the trial court's denial of the church's motion to set aside tax sale, holding that the "alleged deficiencies in notice" neither affected the jurisdiction of the trial court to foreclose the right of redemption nor "did they constitute actual fraud." 83 Md.App. at 618, 576 A.2d 224. The Court of Appeals disagreed, holding that Aggarwal's failure to obtain the church's address from a title company, whose name and address appeared on the binder of a deed in the chain of title,

precluded the circuit court from having jurisdiction over the church in light of Aggarwal's knowledge that the address to which it was sending notice was a "bad address." 326 Md. at 103–04, 603 A.2d 484.

The Court of Appeals made several statements in its *Aggarwal* opinion of particular relevance with respect to the lengths a tax sale purchaser must now go in order to provide the owner with notice:

> Merely relying upon a conventional title abstract may not be sufficient, at least *where a question has arisen* concerning the validity of the address appearing in the tax rolls. . . .
>
> . . . [T]he deed did not contain the Washington, D.C. address of the Church. It did, however, contain the name and address of the title company . . . and that information was therefore known to Aggarwal. . . . Aggarwal's attorney knew that the 52nd Avenue address . . . was a "bad address"—that mail sent to that address would not reach the Church. . . . [U]nder the circumstances of this case there was a high probability that the title company knew the correct address of the Church, and that this information could be obtained by . . . a telephone call or a letter to the title company.
>
> . . . [T]he correct address of the Church . . . was therefore "known" to Aggarwal's attorney within the meaning of § 14–839(a) [the notice statute].

326 Md. at 103–04, 603 A.2d 484 (emphasis added; footnote omitted).

By its interpretation of the word "known" in the tax sale notice context, the *Aggarwal* Court sent a message to those persons involved in the tax sale process. If the tax sale purchaser or his attorney is aware that the address to which notice was sent was, or might be, "bad" and if the purchaser's search, *i.e.*, title examination of the records expressly required to be examined by statute, discloses an entity that might reasonably know the owner's correct address, the purchaser is deemed to know also of that address, and failure to send notice to that address will constitute grounds for setting the

tax sale aside. Subsequent cases have expanded, even further, the concept announced in *Aggarwal.*

In *Kennedy v. Cummings,* 91 Md.App. 21, 23–24, 603 A.2d 1251 (1992), a tax sale case based only upon the nonpayment of county taxes, the attorney for the tax sale purchasers, during foreclosure proceedings, searched

> the Land Records of Charles County . . ., the records of the Register of Wills for Charles County, . . . and the records of the District and Circuit Courts for Charles County . . . both law and equity. . . .

The notice of the right to redeem was mailed to the address for the property owner contained in the tax rolls of Charles County. It was returned with the notice "Return to Sender— Moved—Not Forwardable." In attempting to overturn the foreclosure on constructive fraud grounds, the property owners contended that the correct address was contained in the tax records of the municipality wherein the property was situate and that, even though nonpayment of municipal taxes was not at issue, the tax sale purchasers should, nevertheless, have obtained the address when the municipality's tax records were checked, as would be normally done in a title search in respect to the sale and transfer of property; that a normal title search would have noted that municipal taxes were, in fact, paid, and thus correct records of the property owners' current address were available. Failure to discover the correct address and thus to make a notice to that correct address constituted, according to the property owners, constructive fraud.

We held, relying on the Court of Appeals's *Aggarwal,* that failure to examine the municipal tax records was a failure on the part of the tax sale purchaser to comply with the statute's notification requirement, 91 Md.App. at 34, 603 A.2d 1251, *i.e.,* that section which requires a tax sale purchaser to examine "any records examined as part of the title examination" and requires the purchaser to utilize any addresses contained in "any records" examined. Thus, because the purchasers were required to examine the municipal tax records as a part of the

required title search, they were on notice of what was contained in those records—the correct address. We concluded:

[A]ppellants knew the name of the property owner. Moreover, they knew the address they had was a "bad address." Had appellants completed a title search in accordance with generally accepted standards of title examination, they would have discovered appellees' correct address.

*Id.* at 34, 603 A.2d 1251.

■ *Aggarwal* and *Kennedy* stand for the proposition that a tax sale purchaser, especially one who is on notice of a "bad address," is charged with knowledge of a correct address for a property owner that is contained in, or can reasonably be ascertained by, further efforts based upon information contained in any record that is, or should be, examined during a title examination conducted under appropriate title examination standards in the region wherein the property is located.

■ The present case goes a step further. When a tax sale purchaser is aware that the address to which notice was sent is a bad address, is he required to make an additional contact, beyond the mortgagee notice required to be made by the statute, with a mortgagee whose mortgage is contained in the land records in an effort to obtain the property owner's correct address, and, if that extra contact is made, can the mortgagee legally furnish the address information? [3]

We begin our answer with a case in which we further expanded the measures to which a tax sale purchaser must go in an effort to provide notice to the owner, albeit based upon *Aggarwal*'s reasoning, *Slattery v. Friedman,* 99 Md.App. 106, 118, 636 A.2d 1, *cert. denied,* 335 Md. 81, 642 A.2d 192 (1994). There we stated:

*Aggarwal, Kennedy,* and *Scott* [*v. Seek Lane Venture, Inc.,* 91 Md.App. 668, 605 A.2d 942, *cert. denied,* 327 Md. 626, 612 A.2d 257 (1992)* ] make it clear that the title examination required ... must have the *objective* of ascer-

---

3. We shall briefly address the second aspect of this issue *infra*.

taining the correct address of the owners. Not only must the,holder of the certificate of sale consider addresses found in the land records, any information in those records that could reasonably lead to the owner's correct address must be pursued.

In *Slattery,* the property owned by Slattery had previously been divided into two parcels—A and B. That division was shown on a recorded plat that would have been examined during a title search. Only one parcel, parcel B, was sold at tax sale, and the notice was only mailed to the address contained in the tax rolls for that parcel, an incorrect address. We noted that the plat indicated the division into two parcels. We then noted that the property tax roll for parcel A, also owned by Slattery, might presumably contain his correct mailing address. Thus, it "might lead to the conclusion that Friedman did not find the Slatterys' correct address because of his manifest indifference to doing so. If that be the case, the Slatterys are entitled to have the judgment of foreclosure reopened. . . ." 99 Md.App. at 118, 636 A.2d 1. We remanded the case to the trial court for its determination as to whether such an examination of the tax rolls as to parcel A would have "revealed . . . information [leading to]˙ Slatterys' correct mailing address." *Id.* at 120, 636 A.2d 1 (footnote omitted).

Under the *Aggarwal* line of cases, then, our assessment of the somewhat different factual situation in the case *sub judice* is primarily two-fold, as we note below:

1. Does the notation on a mailed notice to the address contained in the tax records "Return to Sender" constitute knowledge of a bad address? and, if it does,

2. Where there is knowledge of a bad address, does knowledge of the existence of a mortgage on subject property require the forecloser of the right of redemption to contact the mortgage company to obtain a correct address for the property owner?

There are some distinctions between the facts in *Aggarwal* and the instant case. In *Aggarwal,* the property was a vacant lot, Aggarwal was in possession of information from which he

could reasonably have deduced that it was vacant, he made no effort to contact a church registry where the correct address of the church might have been discernable, and he failed to contact the title company whose name and address were contained on a land record pertinent to the property there at issue. In the case *sub judice*, the property was improved and occupied by tenants. It could, therefore, have been the address of the property owner (although it was not). Additionally, greater efforts were made in the case *sub judice* to determine a correct address. First, appellee, as required by the State statute, named the mortgagee and assignee as parties in his Complaint to Foreclose Right of Redemption and caused notice to be served upon them. In *Aggarwal*, the statute did not require any notification to the title company and it was not notified nor was any attempt made to obtain the owner's address from the title company.

Conversely, however, the fact that the property was occupied provided appellee, in the case *sub judice*, with another method of determining the owner's correct address—that is, ask the tenants where they mailed the rent. That the tenants knew the address of appellants is clear. As soon as appellee notified them that he was the new owner, the tenants contacted appellants at appellants' address. We acknowledge that in some cases the "occupancy" status of a subject property may not be known or readily apparent from the specific tax or title records, i.e., though structures may be on the property they may be unoccupied or the property may be unimproved, as in *Aggarwal*. In *Aggarwal*, the Court of Appeals indicated that knowledge of a property's unimproved status was equivalent to a "bad address." *See* 326 Md. at 104, 603 A.2d 484. Similarly, one could argue that residence by someone other than an owner could also indicate a "bad address."

Following the reasoning of *Aggarwal* and its progeny, a mailed notice returned undelivered with a notation "Return to Sender" is, although not conclusive, indicative of a potential problem with the address contained thereon, *i.e.*, that the address may not be the current address of the owner. Our cases since have construed *Aggarwal* as imposing strict notice

duties on purchasers, far beyond those required by the literal language of the statute.[4]

We are constrained by *Aggarwal,* and the subsequent cases, to hold that, upon return of the notice, appellee was on notice that appellants might not live at the address in question. He *could have* then made inquiry of the occupants of the property but did not do so. Under *Aggarwal,* and the cases since, he should have made contact with the mortgagees identified in the mortgage contained in the chain of title that should have, and were, in fact, identified by appellee's abstractor. The only remaining question is whether that inquiry could reasonably have been expected to result in a correct address. The parties do not dispute that the mortgagees had the address. Because they were creditors and because the covenants in the mortgage document required appellants, as the mortgagors (grantors in a deed of trust), to pay the taxes, it is reasonable to presume that, if asked, the mortgagees could have furnished the address if they chose to do so unless legally prohibited from so doing.

■ Both of the lenders (we refer to them as mortgagees even though a deed of trust was the form of lending document encumbering the property at issue) were, at the time of the tax sale, licensed to do business in Maryland under the Maryland Mortgage Lender Law, *see* Md.Code (1980, 1992 Repl.Vol.), § 11–501 of the Financial Institutions Article (FI). They were, therefore, financial institutions as defined by the statute. However, not all financial institutions are subject to the confidentiality provisions of the article.

Section 1–302 prohibits a "fiduciary institution, its officers, employees, agents, and directors ... [from] disclos[ing] to any person any financial record relating to a customer of the institution." FI § 1–302. A fiduciary institution was, at the time of the tax sale in the case at bar, defined as:

---

4. Apparently, the Legislature has not revisited the statute since *Aggarwal.* Its language in that statute that its provisions "supersede any other requirement in other cases or civil causes generally," TP § 14–839(b)(2), predated *Aggarwal.*

(b) *Fiduciary institution.*—"Fiduciary institution" means:

   (1) A national banking association;

   (2) A State banking institution;

   (3) A credit union that is organized under the laws of this State or of the United States;

   (4) Any other organization that is organized under the banking laws of this State and subject to the supervision of the Bank Commissioner; or

   (5) A savings and loan association that is organized under the laws of this State or of the United States.

FI § 1–301(b).[5] It is clear that, in the case sub judice, the lenders were not national banking associations, State banking institutions, credit unions, or savings and loan associations. Likewise, the lenders were not "other organization[s] ... organized under the banking laws of this State and subject to the supervision of the Bank Commissioner." FI § 1–301(b)(4). Banking institutions, *i.e.*, "an institution that is incorporated under the laws of this State as a State bank or trust company," FI § 1–101(d), credit unions, and savings and loan associations were all, at the time of the tax sale, subject

---

**5.** Amendments to section 1–302 that became effective on September 29, 1995, changed the definition of fiduciary institution. Fiduciary institutions are currently defined as:

   (b) *Fiduciary institution.*—(1) "Fiduciary institution" means:

   (i) A national banking association;

   (ii) A State banking institution;

   (iii) An other-state bank that maintains a branch in this State;

   (iv) A credit union that is organized under the laws of this State or of the United States;

   (v) Any other organization that is organized under the banking laws of this State and subject to the supervision of the Commissioner; or

   (vi) A savings and loan association that is organized under the laws of this State or of the United States.

   (2) "Fiduciary institution" does not include any person licensed by the Commissioner under Title 11 of this article.

FI § 1–301(b) (Supp.1996). Thus, under current law, as well as the law when this case was decided below, mortgage lenders governed by Title II of the Financial Institutions Article, such as the mortgagees in the case *sub judice*, are not fiduciary institutions subject to the confidentiality requirements of section 1–302.

to the supervision of the Bank Commissioner. See FI §§ 5–201, 6–102, 9–207. Mortgage lenders, however, were not supervised by the Bank Commissioner but were instead supervised by the Commissioner of Consumer Credit. *See* FI § 11–503. Thus, the mortgagees, although financial institutions, were not, by definition, "Fiduciary institutions." Accordingly, they would not have been restricted by the confidentiality provisions of sections 1–301 and 1–302 from disclosing the name and address of owner. As we have said, it is reasonable to suppose that the mortgagees had, and would have voluntarily furnished, the address. Thus, under the reasoning and language of *Aggarwal*, "The correct address . . . was therefore 'known' to [appellee] within the meaning of § 14–839(a)." 326 Md. at 104, 603 A.2d 484.

We feel obliged to clarify that our holding here may well not be, and, in all probability, would not be, applicable to banks that are subject to the confidentiality provisions of the Financial Institutions Article.

For the reasons we have stated, appellee was deemed to have "known" appellants' correct and current address and failed to furnish notice that complies with the Court of Appeals's holding in *Aggarwal*. The circuit court, therefore, did not have personal jurisdiction over appellants; it should have granted appellants' Motion to Set Aside Final Judgment and should have fixed the amount for redemption. As indicated, we shall reverse and remand for the circuit court to fix the amount necessary for redemption.[6]

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT IN ORDER FOR IT TO FIX THE**

---

**6.** The Court of Appeals's opinion in *Aggarwal* imposes a standard of notice much more stringent than the constitutional notice requirements stated in the federal cases. While notice in a particular case may satisfy the Supreme Court's definition of constitutional notice, and complies with the literal language of the Maryland notice statute found to be constitutional by both appellate courts, such notice, as in the case at bar, may not comply with the Court of Appeals's *Aggarwal*. *Aggarwal* is the law. Reliance on the federal cases, and on a strict interpretation of the language of the statute by litigants and trial judges, without a consideration of *Aggarwal*, will merely cause reversals ad *infinitum*.

AMOUNT NECESSARY FOR REDEMPTION; COSTS TO
BE PAID BY APPELLEE.